D. L. Gregg, for the plaintiff.

C. C. Harris, for the defendant.

---

# SUPREME COURT—IN EQUITY.

---

## W. JARRETT vs. P. F. MANINI.

Whether the complainant, who was in trouble and anxiety of mind, had a right to convey away his property to a trustee for the benefit of his son, depends upon the fact, whether he was in debt, which he had no means to pay, and whether done to defraud creditors.

A conveyance of property is not *ipso facto* void, though the person making it may be under a prosecution for embezzlement.

The direct mode of creating a trust, is by some writing signed by the party from whom it emanates ; yet there are resulting trusts implied by law from the manifest intention of the parties, and the nature and justice of the case.

If the trust has taken effect, it cannot be defeated by a re-conveyance of the property to the party who created it.

ALLEN, C. J.

The demurrer to the bill alleges, First : That it appears by the bill that the complainant conveyed the property to the respondent which he now seeks to recover, because he was apprehensive of a prosecution for embezzlement of money by the Hawaiian Government, and that this transfer of the property, under the circumstances alleged on the face of the bill, is against public policy and the principles of equity.

The principles of law applicable to fraudulent transfers of property have been clearly stated.  A conveyance of property made with the intent to defraud creditors, is void as to them, and the grantor cannot recover back property conveyed with such a purpose.  He is bound by his own fraudulent act.  The question here is, whether by the terms of the bill he declares, either by implication or expressly, that he makes this conveyance to avoid or defeat his creditors.

It appears that the complainant had leased, in 1851, a large tract of land at Waianae for a term of fifty years, and had associated the respondent with him in stocking it, and to whom was entrusted the general management.  It appears, further, that the parties were on intimate terms, and that the respondent had expressed his intention of adopting complainant's son, who was named Paul from regard to the complainant.

Under these circumstances, and from these considerations, he made the conveyance which he now seeks to revoke.  The complainant was in trouble and anxiety of mind, and he sought to place his son in a condition of independence.  Whether he had a right to do this, by conveying this property, depends upon the fact whether he was in debt which he had no means to pay, and whether it was done for the purpose of defrauding his creditors.  It is not a legal sequence because a person is under arrest even for embezzlement, that a conveyance of property is void.  It is not void, *ipso facto ;* and therefore this cause of the demurrer is overruled.

It is proper in this connection to notice that the defendant, on the 22d day of December, 1859, executed a deed, conveying to the plaintiff, as trustee of his said son, Paul, all the rents accruing from certain real estate in Honolulu, being moved thereto by good and just consideration of affection towards his adopted son, Paul Jarrett, since the year 1851.  It is explicitly

declared in said conveyance that the rents accruing from said property should be used for the purpose of maintaining and educating his adopted son. This is not in terms an admission of the trust, as set forth in the bill, but it is an evidence of an affectionate regard for the son of the plaintiff, and to some extent, it carries out the purpose declared in the bill, that the plaintiff's conveyance was in trust for his son.

Justice Story says " that a trust is not under all circumstances absolute, for if the trust is purely voluntary, and without any consideration, and the beneficiary has not become a party to it by his express assent after notice of it, it is revocable, and if revoked, then the original trust is gone, and an implied trust results in favor of the party who originally created it." According to the terms of the bill, the trust is created, and the *cestui que trust* is an infant, and therefore his dissent would have no legal effect, and hence no revocation could be effected by an act of the infant. In this case the plaintiff certainly has no right to revoke the trust, from the relation which the defendant bears to it. As an illustration, the defendant adopts the child, and receives the property in trust for his benefit ; he then has rights and duties as trustee. It is true, as alleged in the third cause of demurrer, that the said property was conveyed to the defendant for the use and benefit of the plaintiff's son, and that as he has not any further interest in the property, he is not a proper party to the bill. It is further agreed in the bill, that the defendant agreed to account to the plaintiff for all the proceeds and profits of said land during the minority of the plaintiff's son, and which were to be devoted to his benefit. It is manifest, then, that he has a duty and interest in the matter ; and if the proofs sustain the allegations in the bill, he has a right to an account of the proceeds and profits of the estate conveyed. It is equally clear that a re-conveyance of the property to the plaintiff would be in direct conflict to the terms of the trust as alleged in the bill—for it is expressly set forth that the profits arising from the property are to be for the benefit and use of the son during his minority, and the title to become complete on his becoming of legal age. To this extent the demurrer is good, that the prayer of the plaintiff is not fully in conformity with the allegations of the bill, for if a trust is sus-

W. Jarrett *vs.* P. F. Manini.

tained, a re-conveyance of the property cannot be made to the party who created it. If the trust has taken effect, he cannot defeat it. This does not go to defeat the bill, but to that portion of the prayer.

It is further assigned as a cause of demurrer, that as the alleged agreement for the adoption of the plaintiff's son, and the appropriation of the property to his use until he became of age, when he should be entitled to its use and control entirely, is not in writing, and is in contradiction to the terms of the deed from the plaintiff, and is therefore void in law.

The English statute of frauds requires the declaration or creation of trusts of lands to be manifested and proved by some writing signed by the party creating the trust; and it is contended by the defendant that as the trust alleged in the bill is not evidenced by writing, it is in derogation of law, and void. While there is the direct mode of creating a trust, there are resulting trusts implied by law from the manifest intention of the parties, and the nature and justice of the case. Hill, in his treatise on Trustees, says that trusts of this character are better described as constructive trusts, than as trusts by operation of law. Such trusts are expressly excepted from the operation of the statute of frauds. It is alleged that the defendant holds the property in trust for Paul, the son of the plaintiff. There is no declaration of trust in writing, and if any trust exists, it is an implied, or resulting trust. It is an admitted principle of law, that if one purchases an estate in the name of another, a trust results to him who advances the purchase money, and parol evidence is admissible to show the payment, although in contradiction to the deed. Justice Woodbury says " that a mortgage when an absolute deed exists, may be shown in chancery by proving by parol, the relation of debtor and creditor between the parties, or the recognition in other ways that the transaction was a mere security for a loan." (Tufts *vs.* Tufts, *et al.*, 3 Woodbury & Minot, p. 462.) So, if an agent uses the money of the principal to purchase land with, and he takes the deed in his own name, a resulting trust would arise in law in favor of the principal, not prohibited by the statute of frauds, and independent of its provisions. (Hill on Trustees, 55 ; 2 Story's Eq. Juris., Secs. 1201–6.) A trust is implied when a

conveyance is made of land without any consideration or declaration of the uses. Chancellor Kent says "that a Court of Equity will regard and enforce trusts in a variety of other cases, when substantial justice and the rights of third persons are essentially concerned. If a trust is created for the benefit of a third person, without his knowledge, he may, when he has notice of it, affirm the trust, and call on the Court to enforce the performance of it."

In Boyd *vs.* McLean, 1 Johns. Rep., p. 582, it was held that a resulting trust might be established by parol proof, not only against the face of the deed itself, but in opposition to the answer of the nominal purchaser denying the trust, and even after the death of such purchaser. In the case of Jenkins *vs.* Eldridge, 3 Story's Rep., p. 181, it appeared that the defendant, upon a conveyance of lands to him in fee upon a private trust, promised to reduce the agreement to writing and to keep it as a private memorandum, to be found among his papers in case of his death, in order to secure the rights of the *cestui que trust*, but afterwards refused so to do, and this was held sufficient to take the case out of the statute. In the same case, the Court say, "that a Court of Equity will enforce a parol trust resulting from agency and resting upon honorary obligations"—" and that the statute of frauds is never allowed as a protection to frauds, or as a means of seducing the unwary into false confidence to their injury." Chancellor Kent, in his Commentaries, vol. 4, p. 143, says : " A deed absolute on the face of it, and though registered as a deed, will be valid and effectual as a mortgage as between the parties, if it was intended by them to be merely a security for a debt. And this would be the case, though the defeasance was by an agreement resting in parol ; for parol evidence is admissible to show that an absolute deed was intended as a mortgage, and that the defeasance had been omitted or destroyed by fraud or mistake." In the case of Taylor *vs.* Little, 2 Sum. Rep., p. 228, 232, 233, he says that " it is the same, if it be omitted by design, upon mutual confidence between the parties ; for the violation of such an agreement would be a fraud of the most flagrant kind, originating in an open breach of trust against conscience and justice." And this is fully supported by the case of Morris *vs.* Nixon,

1 How. Rep., 118. In the case of Sturges *et al, vs.* Cary *et al,* 2 Curtis Rep., p. 382, Justice Curtis says "that a deed, absolute in form, may be shown to have been really a mortgage by the oral testimony of two witnesses against the denials of the answer, where these denials are not satisfactory in themselves, and are accompanied with admission that some confidential relations existed between the parties, not consistent with the terms of the deed."

Regarding the joint intentions of the parties to the stock on the land, and their friendly relations, and the assurance of the defendant to adopt the plaintiff's only son, and who was regarded, in fact, as an adopted son and heir, and who has been recognized as such since 1851, as appears by a deed from the defendant to the plaintiff, before referred to, it presents a strong case, under the principles as laid down by the most eminent jurists, for the interposition of a Court of Equity.

Mr. Montgomery and Mr. Harris, for plaintiff.

Mr. Bates and Mr. Davis, for defendant.