## SUPREME COURT—IN BANCO.

### JANUARY TERM—1871.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

ESTATE OF HANNAH MAUGHAN, DECEASED INTESTATE.

WRITTEN ARTICLES OF ADOPTION are not the basis of INHERITANCE. (ALLEN, Ch. J., dissenting.)

ALLEN, Ch. J.: By the judgment of the majority of the Court articles of adoption have not the effect of making the adopted child an heir.

The appellant was adopted as the child of Hannah Maughan by the articles of agreement as follows, viz.:

"Articles of agreement made and concluded this twenty-seventh day of August, A. D. 1855, between Moewale, the father and only surviving parent of Pauahi, a female child about thirteen years old, and Hannah Maughan, of Honolulu, witnesseth: That the said Moewale does hereby give unto the said Hannah Maughan, his child, the said Pauahi, to be adopted by her as her own child, and doth release all control and right over the said child unto the said Hannah Maughan, in consideration of the covenants hereinafter entered into by the said Hannah Maughan, and the said Hannah Maughan agrees to adopt the said Pauahi as her own child, and to clothe, educate, and In every way care for the said child as becomes the duty of a good parent. As witness our hands and seals the day and year first above written.

(Signed)                           MOEWALE.
(Signed)                           HANNAH MAUGHAN."

Which were duly acknowledged and recorded as follows, viz.: "Personally appeared before me the above-named

Estate of Hannah Maughan, deceased intestate.

Moewale and Hannah Maughan, and acknowledged that they had executed the written instrument for the purposes therein mentioned. In witness whereof I have hereunto set my hand and caused to be affixed the seal of the Supreme Court, at Honolulu, Oahu, this 27th day of August, A. D. 1855.

(Signed)                              G. M. ROBERTSON,
                    Associate Justice of the Supreme Court."

"REGISTRAR'S OFFICE,
          Honolulu, July 19th, 1869.

"I hereby certify that the foregoing is a true and correct copy of an instrument on record in this office in liber 6, on pages 769 and 770, of Miscellaneous Records.

(Signed)                              THOMAS BROWN,
                              Registrar of Conveyances."

And the question is, has she, by virtue of this agreement, any rights of inheritance?

Had it been expressly stated that the child should inherit, it is admitted by one of my associates that such stipulation would have enabled her to do so. There can be no doubt that there was an adoption, which was recognized in ancient times as giving the right of inheritance. It was very wisely determined by the Legislature that this relationship, which was regarded by the Hawaiians as very sacred, should be established in writing, so that it should not depend on testimony which might become uncertain from length of time.

In the case of Abenela vs. Kailikole, Vol. 2, Hawaiian Rep., 660, the Court say, "that all agreements of adoption, which are of great importance as affecting the rights of property, should be made in writing and duly recorded, and as no compliance with this requirement has been shown in the present case, the plaintiff can not prevail." It was very clearly the opinion of the Court, that had the adoption been made in writing, the party would have inherited. Now in this case the person was adopted, and is entitled to all the

rights of an adopted child as understood. It is very true that "the terms of the adoption may be definitely stipulated in the agreement." I regard the stipulation as conveying the rights of inheritance, when it declares that "the said Hannah Maughan agrees to adopt the said Pauahi as her own child, and to clothe, educate, and in every way care for the said child as becomes the duty of a good parent."

Now, under the laws of inheritance everywhere, one's own child inherits the estate of the parent, as in our own Code. Is it caring for the child as becomes the duty of a good parent, to leave the child without some suitable provision? Had that been the law as understood by the parents, there can be no doubt that some provision would have been made for her.

I regard the meaning, "adopted child," as synonymous with child, in its legal effect. As when a statute declares that the property shall be divided equally among the intestate's children, it includes all children, whether by adoption or by blood, and hence it was unnecessary to make an express provision for each. What can be more expressive than the language used in these articles, that the said Hannah Maughan agrees to adopt the said Pauahi as her own child? An "own child" inherits under the law, why then should not the child adopted as an own child inherit? In view of the customs and usages of the Hawaiians in relation to adopted children, and in view of the express language of the articles of agreement, can there be a doubt that when they speak of their children, they include those adopted as well as those by blood? Hence it was not regarded as necessary to be so explicit, as is here contended. It could not have been the idea of Mrs. Maughan, that the moment she died the person whom she had adopted as her own child, should be houseless and homeless. That was not the idea of the Hawaiians, and it was not, as I think, the idea of the Legislature when they made that provision that the articles of

adoption should be in writing. The object was to make the relationship clear and well defined, and my own opinion is, that if a child is adopted as one's own, it is adopted for all good purposes, and that the important one of inheritance is secured. The counsel for the contestant has argued very elaborately upon the unjust consequences which will result to collateral blood relatives, if this principle of adoption obtains. Every person has a right to dispose of his property as he pleases, under the law, and he has a right to adopt a child, and secure his property to that child. Usually, I suppose, persons adopt a child when they have none of their own. In instances of this kind, the affections of the persons who adopt become as much interested in the child as if it was their own by blood.

It is not a question of consequences, but a pure question of law, and of right under it.

I therefore dissent from the decision made by a majority of the Court.

HARTWELL, J.: The petition of Pauahi and husband for administration on this estate, by virtue of written articles of adoption executed in 1855 between her father and the intestate, was contested by Mrs. Nancy Wirt, the intestate's sister and sole surviving blood relative or connection, with the exception of the petitioner. The intestate had, previous to this adoption, inherited certain property as devisee under the will of her husband, Capt. Joseph Maughan. The Court granted no administration, there appearing to be no sufficient cause therefor, but made an interlocutory decree, November 10th, 1869, that "the petitioner is not entitled to the said estate by virtue of the said written articles of adoption, but that the contestant, Nancy Wirt, was the intestate's sole heir at law." From this ruling, made by HARTWELL, J., in probate, appeal was taken to this Court in banco, and heard at last January term.

In view of the importance of the questions thus presented,

I have carefully reviewed and reconsidered my first impression on them, and such further arguments as have been presented; but the reasons which then convinced me still apply, and I am unable to find any reason, resting in law, for sustaining the doctrine that articles of adoption are equivalent to wills, nor can I find any law, or statute, whereby adopted children inherit as do legitimate children of the blood.

Before coming to the main question, I can not refrain from expressing my entire uncertainty of the jurisdiction of this Court to make a decree of general heirship in any case, except collaterally in deciding on the right to administer, or on the distribution of personalty left in the administrator's hands, or in the various collateral forms in which such questions may arise, as for instance in proving title in an action of ejectment or suit in equity. The Constitution limits the judicial power to "cases in law and equity arising under the Constitution and laws of this Kingdom." The probate powers of this Court are found in statutes which authorize the appointment, removal, and supervision of executors, administrators and guardians, the admeasurement of dower and partition of real estate, and to "do all such other acts as may be *necessary* to carry into full effect all the powers which are or may be granted to it by the Constitution and laws of the Kingdom." None of these probate powers expressly or by implication authorize a general decree of heirship. Even the general equity power of *Quia Timet*, or of Injunctions in Bills of Peace, to quiet titles, appears to exist in other countries only by statute, in cases where there are no actual claimants. I regard this as one of the most serious questions for the Legislature, in order that a sure, definite and certain procedure may be fixed whereby titles in land may be adjudicated and settled finally. But the point of jurisdiction is not presented, and is suggested merely from a hope that at the approaching session of the Assembly, the

Estate of Hannah Maughan, deceased intestate.

diversity of view on this matter may be set at rest by statute.

In regard to rights by inheritance, they are fixed and ascertained, in other words they exist for the first time, when the ancestor dies, or when the instrument, call it a will or contract, is executed under which such rights are claimed, and in either case *they are such rights only as are defined by the statute law of the realm.* If a person claim to be heir at law of one deceased intestate, of course the claim can not be made before the ancestor's death, so that it may appear what heirs survive. If he claim under a written instrument, that instrument can be nothing more or less than a will, and in order to its validity it must conform to all the statute requirements of a will, regardless of the wishes, views or expectations of those who executed or are interested in the instrument. A document drawn and executed in all respects as a will, but only one subscribing witness, is utterly worthless for the purpose of a will or for any purpose, and this is in spite of the intention of parties however clearly expressed; and for the simple reason that such is statute law of the land. Whatever the ancient or the present customs or ideas of natives of this Kingdom on the subject of adopting children, fathers or mothers, and I may add in regard to relations between the sexes, once recognized by custom and not prohibited, but which are no longer legitimate, such customs and ideas can not prevail against our statutes of wills, which prescribe what constitutes a will, and of descents, prescribing all the inheriting relations but not mentioning adoption. An adopted father is as much an own father, in the native mind, as an adopted child, but neither is an *heir at law.*

It is not enough to say that an adopted child is an heir because· he, his adopters, or his natural parents think he is so, for they do not make the law. There are only two kinds of heirs: those *made* such, (i. e., by last will), and those *born*

such, (i. e., heirs at law.)    If adopted children were heirs at law, the statutes would be strangely and unfortunately defective, in failing to provide for the heirs of the adopted child —its own blood heirs, or its adopted parents' blood heirs. If the heirs of the adopted child succeed, the property of the adopting family is diverted from its blood, and if the heirs of the adopters succeed, then the property of the child's kindred is diverted, and in either case the statute of descents would be set aside.   By that statute, on failure of *kindred*, the personal property escheats to the government, and the land reverts to the owner of the ahupuaa; if there be no issue, which the statute defines as "lineal descendants," one half of the estate goes to the widow and one half to his father and mother.   The statute is explicit, that the property of the intestate "*shall* descend to and be divided among his heirs *as hereinafter prescribed.*"   "If he leave no widow nor issue, the whole *shall* descend to his father and mother." "If he shall leave no *issue* nor father nor mother, his estate *shall* descend one half to his widow and the other half to his brothers and sisters."   To these statute claims no denial can be made based on the laws of this Kingdom.

This is not a case in which any custom is alleged as having the force of law, and if alleged, it could have no force in the face of explicit statute provisions.   No law makes an adopted child an heir, and to say that an agreement of adoption has the force of a testamentary act, is both to presume, what is not shown to be the truth, that such was the intention of such agreement, and also that the intention of parties shall prevail against the statute of wills ; and further, it is saying that whenever the Legislature speaks of *children* generally, they do not mean legitimate issue, but adopted children as well.

Again, this agreement stipulates that "the said Hannah Maughan agrees to adopt the said Pauahi as her own child, and to clothe, educate, and in every way care for the said child

Estate of Hannah Maughan, deceased intestate.

as becomes the duty of a good parent." The statute pre-
scribes that "the terms in the adoption must be definitely
stipulated in the agreement." Laws 1846, vol. 1, p. 198. Is
the most important item of all, that the adopted child shall
inherit its adopter's estate, to be left to inference, as against
statute rights of heirs at law ? The expressed statute right
of the adopted child is found in the provision that his adopter
is " liable from the day of adoption to all parental duties and
obligations." *Ibid.* To make even a legitimate child an
heir is neither legally nor morally a parental duty. Neither
the agreement nor the statute makes the adopted child an
heir. *Own* children, meaning issue of the blood, even, can
not inherit to the exclusion of *legitimate* heirs. It is true that
articles of adoption are required now, by special statute, to
be written ; but the Statute of Frauds would have required a
written memorandum of such agreement, and the writing
adds no new force to the agreement itself.

Finally, in regard to decisions of this Court supposed to
affect this question : In the Ah Chu case, there was a will.
In the Abenela case, which was merely at *nisi prius*, without
argument, a claim under adoption was rejected for want of
a written agreement, and the Court there go on to intimate
*obiter* that if the agreement were in writing, it would have
the effect of a will. But no opinion was given or required
on that point.

In the case of the Estate of His late Majesty Kamehameha
IV, the Court, *in banco*, say, that Liholiho would have been
" entitled as the adopted son to inherit," even if he had not
taken under a will. But this also is a mere *obiter dictum*, and
is hardly reconcilable with the actual decision explained by
their subsequent remark, that the descent of the rest of the
property (not reserved to the Crown) " must be governed by
the general law of inheritance and distribution, and Her
Majesty Queen Emma is *therefore* entitled as *statutory heir* to
one half." This last point *was* decided, and the decision I

regard as binding and conclusive in the present case as against any but statutory heirs.

For these reasons, I think the appellant is not the heir whom the Court can or the law does recognize, and that the sister, Mrs. Wirt, as sole surviving heir, is entitled to take under the statutes of descent and distribution.

WIDEMANN, J.: It seems clear to me that the written articles of adoption, without any further evidence of the intentions of the adopter, are insufficient under the law and statutes of the land to establish a title to inheritance for the adopted child.

I think therefore that the claim of the adopted child in this case should be rejected.