## IN THE MATTER OF THE ESTATE OF KAMILA P. WILHELM, Deceased.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED SEPTEMBER 17, 1900.    DECIDED DECEMBER 27, 1900.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

K. and F., adopting parents, covenanted in and by a written agreement, to take a child "in adoption, and to adopt him as their son, to nurture, care for, educate and in all respects to provide for him as if he were their own issue." The Circuit Judge before whom the parties acknowledged the execution of the instrument, added to the certificate of such acknowledgment an order that "the adoption thereby effected is hereby legalized."

Held, that the adopted child did not, either by virtue of the agreement of the parties or of the order of the court, become, upon the death of his adopted mother, entitled to inherit from her as though he were her own child.

### OPINION OF THE COURT BY PERRY, J.

Kamila Paulo Wilhelm, late of Honolulu, died, intestate, in June, 1899, possessed of certain real and certain personal property within these islands. She left surviving her her husband, an only child, Libby Ulii Smithies, aged 23, and an adopted son, Frederick Albert Smith Wilhelm, then two years of age. Upon the hearing of the petition of the administrator of the estate of the decedent for approval of his accounts, an order of distribution and discharge, the interests of the minor being represented by a duly appointed guardian *ad litem*, the Circuit Judge held that the adopted son did not inherit any portion of the estate of the decedent. From the decree entered to that effect, an appeal was taken to this court.

On July 12, 1897, a written agreement providing for the adoption of the child above named, was executed by and be-

tween the natural parents as parties of the first part and the decedent and her husband as parties of the second part, the operative portion of the instrument being as follows:

"Said parties of the first part hereby give their said son, Frederick Albert Smith, unto the said parties of the second part, to be by them adopted, and hereby relinquish and quit-claim forever unto them all their respective rights as said parents in the said Frederick Albert Smith, in consideration of the covenants by them hereinbelow made.

"And the said parties of the second part hereby covenant to take the said Frederick Albert Smith in adoption, and to adopt him as their son, to nurture, care for, educate, and in all respects to provide for him as if he were their own issue."

The parties acknowledged the execution of the instrument before a Circuit Judge, who signed a certificate of that fact and added, after such certificate, the words, "and the adoption thereby effected is hereby legalized." The agreement was duly recorded.

The contention of the guardian *ad litem* is that the appellant by virtue of the agreement of adoption and of the decree of the court became, upon the death of his adopted mother, capable of inheriting and entitled to inherit from her as one of her "children."

So far as the adoption effected by the agreement is concerned, this question has been decided by the Court adversely to the present appellant, in the matter of the *Estate of Hannah Maughan*, deceased intestate, 3 Haw. 262. The covenants of the instrument under consideration in that case were in effect the same as those in the instrument in the case at bar, the language there used being: "the said Moewale does hereby give unto the said Hannah Maughan, his child, the said Pauahi, to be adopted by her as her own child, and doth release all control and right over the said child unto the said Hannah Maughan, in consideration of the covenants hereinafter entered into by the said Hannah Maughan, and the said Hannah Maughan agrees to adopt the said Pauahi as her own child, and to clothe, educate and in every way care for the said child as becomes the

duty of a good parent." The case differs from the present one only in that the Justice who took the acknowledgment did not make or attempt to make any judicial decree in the matter. Hartwell, J., in an elaborate opinion, held that there are only two kinds of heirs, those *made* such, (i. e., by last will), and those *born* such, (i. e., heirs at law), that the articles of adoption could not be regarded as a testamentary act, that the statute of descent in its use of the words "children" and "issue" refers only to children of the blood and does not include adopted children, and that there was no other statute in force making an adopted child an heir. Widemann, J., concurred in the conclusion reached, in these words: "It seems clear to me that the written articles of adoption, without any further evidence of the intentions of the adopter, are insufficient under the law and statutes of the land to establish a title to inheritance for the adopted child. I think therefore that the claim of the adopted child in this case should be rejected." This we understand to mean that Justice Widemann based his concurrence upon the failure of the parties to express any intent to make the child an heir, reserving liberty, evidently, to consider, whenever the question should properly arise, whether or not, where the intention to make the child an heir of the adopting parents was clearly expressed, such child did become an heir. Chief Justice Allen dissented, expressing the opinion that the agreement sufficiently conveyed rights of inheritance and that the word "children" in the statute of descent includes all children, whether by adoption or by blood. The decision of the majority of the court, then, was that the adoption created by that agreement did not operate to give the adopted child any right of inheritance from its adopter, although, as already pointed out, Justice Hartwell's opinion and conclusion would apply to any agreement of adoption, even though specifically purporting to make the child an heir.

The decision in the Estate of Hannah Maughan was affirmed in the case of *Wei See and Ching See v. Young Sheong and Afong*, 3 Haw. 489. The syllabus in the latter case reads, "The

adoption of a child without a declaration of its heirship in the deed of adoption, does not give it rights of inheritance," and the court in the opinion says: "It is contended by the counsel for the defendants that Kalaukapu has the right of inheritance as an adopted child, but this question was settled adversely in the case of 'In re Hannah Maughan,' at the January Term, 1871, and the articles of adoption in the case of Hannah Maughan and those of Kalaukapu are the same in terms, and include no declaration of heirship, which the court said was necessary." This last clause is not strictly accurate so far as it refers to the opinion of Hartwell, J., but that does not render the decision any the less an affirmance of the former ruling on the subject.

No actual decision to the contrary has been rendered by this court. The statement, in the opinion in the matter of the *Estate of Hakau*, 1 Haw. 473, "had Manoa been adopted by Hakau as her son, in due form of law, he would have been sole heir to her estate, upon her dying intestate," was not required by the facts of the case and was *obiter dictum*, for the court expressly found that there was no satisfactory evidence to show that Hakau had formally adopted him as her child and no evidence whatever that she intended him to share in her property. The same is true of the intimation contained in the opinion in *Abenela v. Kailikole*, 2 Haw. 662, that if the agreement were in writing, the adopted child would have inherited. The agreement was *not* in writing, and the *decision* was based on that ground.

In the case of the *Estate of Kamehameha IV.* the court said that Liholiho "was entitled as the adopted son of Kamehameha III. to inherit the remainder of his estate not devised to any one else, subject to dower." This also was mere *obiter dictum*. Under the will of Kamehameha III. such remainder was specifically devised to Liholiho. Moreover, the court there held that Liholiho "was entitled to inherit those lands" (i. e., those reserved to the Crown) "by force of the Act of June 7, 1848, when he succeeded to the crown, in virtue of the public procla-

mation made by his predecessor with the consent of the House of Nobles." Of the remark first quoted Hartwell, J., correctly said that it "is hardly reconcilable with the actual decision explained by their subsequent remark, that the descent of the rest of the property (not reserved to the Crown) 'must be governed by the general law of inheritance and distribution, and Her Majesty Queen Emma is *therefore* entitled as *statutory heir* to one half.' This last point *was* decided."

The next case cited on the subject is that of the *Estate of Nakuapa*, 3 Haw. 342, decided in 1872, after the Hannah Maughan case and before *Wei See et alt. v. Young Sheong et alt.* There the question was whether one adopted as daughter by oral agreement in accordance with ancient Hawaiian custom and prior to the passage of any law requiring adoptions to be made in writing, could inherit from her adopter who died after the present statutes of wills and descent took effect. The court, Hartwell, J., dissenting, held that she could, provided it was clearly stipulated in the agreement that she was to have rights of inheritance, and ordered a new trial in order that the jury might ascertain what the terms of the adoption were. Thus that case is easily distinguishable from the case at bar. The precise question now before us was not raised or determined in that case; and while the court did say, "Our statute of inheritance declares that property shall be divided equally between the intestate's children. We regard an adopted child as included in this general term," it explained and qualified that statement by adding, "We mean a child who is adopted as one's own child, with the clear understanding that he is entitled to heirship." The decision was not inconsistent with the necessary decision in the Hannah Maughan case, although inconsistent to a certain extent with the views expressed by Justice Hartwell.

In *Kuaiaina et al. v. Kahanu*, 3 Haw. 368, the court simply followed the decision in the *Estate of Nakuapa.* The opinion in *Paris v. Kealoha*, 11 Haw. 450, also cited by counsel, throws no light on the question involved in the case at bar.

To summarize, then, the Hawaiian decisions on the subject, in two cases it has been held that the adopted child did not inherit from the adopter, where the agreement of adoption did not specifically provide that such child was to have rights of inheritance, and no decision has been rendered to the contrary.

Adoption, while it existed under the civil law, was unknown under the common law, and in those States where the latter prevails exists only by virtue of statutory enactments. These statutes (see, for example, those of Massachusetts, Illinois, Indiana, Pennsylvania, New Hampshire and Michigan) not only provide a method or methods whereby adoption may be accomplished but specifically declare that children adopted in conformity therewith shall have certain rights of inheritance from their adopters, these provisions as to inheritance differing to some extent in different States. We have no statute declaring, in terms, what rights of inheritance from its adopter, if any, an adopted child shall have.

It is settled by former decisions that an adopted child does not inherit from its adopter where the agreement of adoption, as in the case at bar, does not clearly and specifically provide that the child shall have such right of inheritance. The question of whether or not, where the articles or decree of adoption give or attempt to give to the child the same rights of inheritance from its adopter that the latter's own children possess, and the adopter dies intestate, such child comes within the meaning of the terms "children" and "issue" as used in the statute of descent, or otherwise inherits from its adopter, is not before us and no opinion is expressed thereon.

The decree of adoption in the case at bar,—assuming that the order endorsed with the certificate of acknowledgment was a valid, judicial decree—clearly provided for an adoption no broader or different in its terms than that effected by the agreement, and does not strengthen the case for the appellant.

The decree appealed from is affirmed.

*B. L. Marx*, guardian *ad litem*, for the appellant.

*P. L. Weaver* for the appellee.