# IN THE MATTER OF THE ESTATE OF GEORGE P. KAMAUOHA, DECEASED.

## No. 1364.

ERROR TO CIRCUIT JUDGE THIRD CIRCUIT.·
HON. J. W. THOMPSON, JUDGE.

ARGUED MAY 1, 1922.                    DECIDED JUNE ·20, 1922.

PETERS, C. J., EDINGS AND PERRY, JJ.

ADOPTION—*decree—collateral attack.*

A decree of adoption is not open to collateral attack on the ground that it does not contain a finding of the facts referred to in L. 1915, Act 47, Section 2.

SAME—*right of adopted child to inherit.*

A person adopted under and in conformity with the statutes of Hawaii inherits through his adoptive mother from her father, as fully as though he had been her natural child.

### OPINION OF THE COURT BY PERRY, J.

Upon a hearing of the petition of the administrator of the estate of one George P. Kamauoha, deceased intestate, for the allowance of his final accounts, for distribution and for discharge it appeared that the decedent left surviving him two daughters, Mrs. Crowell and Mrs. Waialeale. It also appeared that Sarah K. Kamakau, a third daughter, died shortly before the decedent leaving no natural-born children, but leaving an adopted son, Samuel M. Kamakau. The petition for adoption was filed and heard before a judge of the circuit court of the first judicial circuit in the year 1916. The petitioners were Benjamin L. Kamakau and the above-mentioned Sarah K. Kamakau. A written consent to the adoption was executed and filed by the natural parents of the minor. The two petitioners and the natural father were witnesses

upon the hearing of the petition. The minutes of the court, evidently made immediately after the conclusion of the hearing, contain this entry: "The court grants the prayer of the petition for adoption and orders that a decree issue herein as prayed for, decreeing the adoption of the minor child, Samuel Manaiakalani Kamakau, by Benjamin L. Kamakau and Sarah K. Kamakau, his wife, with all rights of inheritance and all other rights incident to the relationship of parent and child." No decree, however, was entered during the term of office of the judge who heard the petition. In 1920, upon motion duly made therefor, supported by affidavits, another judge of the circuit court of the first judicial circuit made and entered a decree, of which the following is a copy:

"The petition of Benjamin L. Kamakau and Sarah K. Kamakau, his wife, of Kona, Hawaii, Territory of Hawaii, praying that this court do decree the adoption of Samuel Manaiakalani Kamakau, a minor, having come regularly to be heard before the Honorable William L. Whitney, Judge of this Court, on August 7, 1916, and it appearing that no decree of adoption has been made and entered although the minutes of the court of August 7, 1916, show that the petition was granted, and good cause appearing:

"It is hereby ordered, adjudged and decreed that the prayer of the said petitioners be and the same is hereby granted and the said Samuel Manaiakalani Kamakau, a minor, is hereby decreed to be adopted by Benjamin L. Kamakau and Sarah K. Kamakau, that hereafter they do maintain towards each other the reciprocal rights of parent and child with the full rights of inheritance from and through each other, the same as if he were petitioners' own child.

"Dated July 30, 1920. This decree to be entered nunc pro tunc as of August 7, 1916."

At the hearing of the administrator's petition for distribution and discharge claim was made on behalf of the minor thus adopted for a share of the estate of the dece-

dent upon the theory that he stood in the same position
with reference to inheritance from the decedent as a nat-
ural child of the decedent's daughter Sarah would stand.
This was resisted on two grounds: first, that the minor
was not validly adopted, and, second, that even if validly
adopted he could not inherit from the decedent through
his adoptive mother.  The probate judge having sustained
the claim of the minor the case comes to this court by writ
of error.

The same contentions are presented in this court as
were presented in the trial court.  The attack upon the
decree of adoption is made, not because it was entered
*nunc pro tunc* (R. L. 1915, Sec. 2278, specifically author-
izes in such a case the entry of a decree by a judge other
than the one who heard the case), but solely upon the
ground that "no finding of fact as required by the statute"
is set forth in the decree.  In this contention the reference
is to the provision of section 2 of Act 47, L. 1915, under
which the adoption proceedings were maintained, that "if
the judge is satisfied of the ability of the petitioner to
bring up and educate the child properly, having reference
to the degree and condition of its parents and the fitness
and propriety of such adoption, he shall make an order
setting forth the facts" and declaring that, from that date,
to all legal intents and purposes such child is the child
of the petitioner and that its name is thereby changed.
No claim is made that in the adoption proceedings there
was want of jurisdiction of the subject-matter or of the
parties and it would seem that no such claim can be suc-
cessfully maintained.  Nor is it claimed that the decree
or the decision upon which it was based was obtained by
fraud.  This being so, the decree cannot be collaterally
attacked.  Van Fleet, Collateral Attack, Sec. 16, p. 14,
and Sec. 17, p. 29; 23 Cyc. 1055, 1068.  It may be that
upon a direct attack made in the adoption proceedings

themselves the decree should have been amended by adding a specific finding of the facts mentioned in the statute just quoted. However that may be, the failure to incorporate that finding cannot now avail the present contestants. The presumption is at this stage that the judge who heard the petition for adoption actually made the findings of fact which are referred to in section 2 of Act 47.

The more important and more difficult question is whether the adopted son of Sarah Kamakau inherited by right of representation the share of the estate of the decedent which his adoptive mother would have inherited if she had survived the decedent. At common law adoption was not known. We have not the benefit, therefore, of any precedents under the unwritten law or of the reasoning of judges in the past with reference to that branch of the law. The question now under consideration—a new one in this jurisdiction—must be considered and decided purely as one of statutory construction. It is almost needless to say that the statutes in other jurisdictions differ not only from the statutes of Hawaii but largely from each other. In so far as the history of Hawaii itself is concerned the earliest period covered by the reports of our supreme court was one with no statute at all on the subject. Next came a period, ending with 1915, when there were statutes but which statutes were wholly dissimilar from that of 1915 and its amendment of 1919, which are now in force. It is an often-repeated statement, as true today as it ever was, that when decisions are based upon statutes they must be examined and read each in the light of the statutes prevailing in its jurisdiction and that they cannot be regarded as authority for or against a particular proposition of law simply because the one conclusion or the other is there reached.

The statutes of Hawaii, under which the issue here involved must be determined, are the following:

"The word 'issue,' as used in this chapter, includes all the lawful lineal descendants of the ancestor." Sec. 3245, R. L. 1915.

"General rules of descent.    The property shall be divided equally among the intestate's children, and the issue of any deceased child by right of representation." Ib., Sec. 3246.

On the subject of adoption: "If the judge is satisfied of the ability of the petitioner to bring up and educate the child properly, having reference to the degree and condition of its parents and the fitness and propriety of such adoption, he shall make an order setting forth the facts and declaring that, from that date, to all legal intents and purposes, such child is the child of the petitioner and that its name is thereby changed." Sec. 2, Act. 47, L. 1915; and Sec. 6, Act 3, L. 1919.

"Effect of adoption. An adopted child, whether adopted by decree or judgment of a judge or court, or by an agreement of adoption legalized by a judge or court, or by an agreement of adoption duly acknowledged and recorded according to law, shall inherit estate undisposed of by will from its adopting parents the same as if it were the natural child of such adopting parents, and shall not inherit estate from its natural parents; the adopting parents of such child shall inherit estate undisposed of by will from such child the same as if such adopting parents had been its natural parents, and the natural parents of such child and their relatives shall not inherit estate from it; and for all other purposes an adopted child and its adopting parents shall sustain towards each other the legal relation of parents and child and shall have all the rights and be subject to all the duties of that relation the same as if such child were the natural child of such parents, and all such duties and rights as between such child and its natural parents shall cease from the time of the adoption." Sec. 1, c. 83, L. 1905, Sec. 2994, R. L. 1915.

There are no other statutes in Hawaii on the subject.

In the first place, in passing it should be noted that in

the decree of adoption of the minor, Samuel M. Kamakau, the order was that the prayer of the petitioners be granted and that the said minor "is hereby decreed to be adopted by Benjamin L. Kamakau" (the husband of Sarah) "and Sarah K. Kamakau, that hereafter they do maintain towards each other the reciprocal rights of parent and child with full rights of inheritance from and through each other, the same as if he were petitioners' own child"; and that while the court in this decree did not follow the precise language of section 6 of Act 3 of the Laws of 1919, which authorizes the court to make an order "declaring that, from that date, to all legal intents and purposes, such child is the child of the petitioner and that its name is thereby changed," nevertheless the decree must be deemed to be in conformity with the statute and to effectuate an adoption to the full extent that adoptions are authorized by the statute. In other words, the decree is to be read as though it declared in express words that from its date "to all legal intents and purposes Samuel M. Kamakau is the child of" Sarah K. Kamakau and her husband.

What is the meaning of the phrase "to all legal intents and purposes?" "To all intents and purposes" is defined in Webster's International Dictionary as follows: "In all applications and senses; practically; really, virtually; essentially." The same phrase is defined in the Century Dictionary as meaning: "In every respect; in all applications or senses; in a loose way, practically, substantially, but not literally." There seems to be no dispute or doubt as to what the phrase means. It is not an ambiguous phrase. It is one commonly used and well understood. The matter stands as though the statute read "for all legal purposes," "in all legal senses," "in all legal applications," "in every respect," the adopted child *is* the child of the adoptive parent. Ordinarily, perhaps, we are accus-

tomed to speak of a child as being a child by natural procreation but it is none the less true that a child may be made the child of another by force of law. The latter, indeed, will not be a child of the blood of his adoptive parent but he will have the status of a natural child with all of the same rights and privileges as fully and completely as if he had been a natural child. The Hawaiian statute of descents, which is applicable in the case at bar, provides "that the property shall be divided equally among the intestate's children, and the issue of any deceased child by right of representation." Sec. 3246, R. L. 1915. Section 3245 says that the word "issue," as used in the chapter in which these two sections appear, "includes all the lawful lineal descendants of the ancestor." The word "ancestor" is an ambiguous one. 1 Words & Phrases, p. 381. In a popular meaning it signifies the one from whom another descends. In some instances in law it means the one from whom an estate is immediately inherited. *In re Estate of Ehu,* 9 Haw. 393, 394; and cases there cited. Whether it shall be given in any particular case the one meaning or the other must depend upon the context. Although possibly at first thought the tendency may be to read the word as used in section 3245 as referring to the intestate, on a more careful analysis it will be found beyond any doubt that it is there used in its popular sense as meaning the one from whom the issue "descends." Section 3246 definitely shows that the issue there referred to is the issue *of the deceased child,* not of the intestate. If the word "ancestor" in section 3245 is construed to refer to the intestate in this case the result must be that under the word "issue," as used in section 3246, not only the two surviving daughters of Kamauoha, but also all of the children of those two daughters, whether few or many, would be entitled to take—something obviously not intended—for the direction is that

the property shall be divided equally among the intestate's *children* (not grandchildren) *and* the issue of any deceased child by right of representation. If the legislature desired to exclude, as takers under the word "issue" in section 3246, all who were not lawful lineal descendants of the intestate, the provision in section 3245 would naturally have been expressed differently, in the negative, as, for example, by providing that "the word 'issue,' as used in this chapter, shall not include any persons who are not lawful lineal descendants of the intestate."

What we are here concerned with, therefore, is not who are the "issue" or "descendants" of Kamauoha, but who are the "issue" or "descendants" of Sarah Kamakau, —not, if it were otherwise, as will be hereinafter pointed out, that the result would be any different but simply that the question under consideration need not be made any more complicated than it is in reality.

The term "descendant" and the term "issue" each includes "children." They also include grandchildren and others in the line of descent. Suffice it for the purpose of this case that they do include "children." The "children" of Sarah Kamakau would therefore take, under the circumstances of this case, by right of representation, the share which Sarah would have taken. The question naturally arises, who are her children? The answer must be, all those persons who lawfully are such, whether made so by nature or by statute. The statute itself (Act 3, L. 1919) directly answers this question by saying that thereafter the adopted child, to all legal intents and purposes, *is* the child of the adopter. If the statute says that after the rendition of the decree the adopted person is the child of the adoptive parent, who can say, short of a legislative repeal, that it is not the child? The legislative command is clear and unambiguous. The command is that for *all*

purposes, not for some only, is the adopted person the child of the adopter. To say that he may be the child of the adopter for the purpose of inheriting *from* the adopting parent, but not for the purpose of inheriting *through* the adopting parent, is to deny to the decree, made in absolute obedience to the statute, all of the legal effect which is due to it. Our statute says that in such a case as this the share of the property shall go to the "children" of a deceased child. Another statute says that for all purposes, in all legal applications, in every respect, the adopted child is the "child" of the deceased child of the intestate. What room is there for construction? It is true that prior to the passage of the act of 1915 section 3246 was read, and correctly, as referring to natural children; but that is because until 1915 no other children were known to the law of Hawaii. Now that the statute has expressly authorized the creation of another class of "children" section 3246 must be read as including those as well as the natural ones. Certainly the effect of Act 3 of the Laws of 1919 is not merely that the adopted child shall thereafter be deemed to be an adopted child. It must mean something more than that, to wit, that thereafter an adopted child shall be deemed to be in all respects a child of the adopter, as much so as is a natural child.

It is true that section 2994, R. L. 1915, defines the rights of adopted children. That section was passed in 1905 and the present law of adoption not until ten years later. The rights declared by section 2994 to belong to an adopted child did not include the right of inheritance through its adoptive parent from the father, for example, of the adoptive parent. In other words, it constitutes the adopted "child" *for some purposes* the "child of the adopting parents but clearly does not constitute it such "child" *for all purposes*. The act of 1919, as well as

that of 1915, makes it such child "to *all* legal intents and purposes," "for all purposes," "in all applications," "in every respect." Surely the inconsistency of the statutes is evident and when this happens the earlier must give way to the later, or, in other words, the later must be held to repeal or modify the earlier by implication. Such is the effect of the law of 1919 upon section 2994. It is our opinion that an adopted child in this Territory inherits, under the circumstances of the case at bar, through its adoptive parent, from the latter's father, who died intestate.

In ancient Hawaii adoption had a strong hold. Children were given and received freely in adoption. This court in the earliest years of its history struggled as between the statutory provisions, or, rather, the absence thereof, on the one hand, and the ancient Hawaiian customs and views on the other hand, to ascertain whether under the newer order of things the adopted child in given cases had an inheriting status. Later, under statutes referring to adoption, but materially different in their provisions from the laws of 1915 and 1919, the court considered cases involving the inheriting qualities of certain adopted children. But none of those decisions, whether the earlier ones or the later ones, can be of any assistance in the case at bar because rendered under a materially different status of the law. In the case entitled, *Estate of Hannah Maughan*, 3 Haw. 262, the court held that written articles of adoption were not the basis of inheritance. In that case the written articles were signed by the parties thereto and acknowledged before an associate justice of the supreme court,—under a statute and practice then prevailing. The essence of the decision of the majority was that there were only two kinds of heirs: those *made* such (i. e., by last will) and those *born* such (i. e., heirs at law) ; that the instrument

there under consideration was not a will and that the statute then in force did not confer upon an adopted person the right to inherit. Both of these statements of the law were undoubtedly correct at that time. The articles of adoption did not purport to give rights of inheritance, did not conform to the legal requirements of a will and could not operate as such. The statute was entirely silent on the subject of the inheriting quality of adopted persons.

For a review of other Hawaiian cases on the subject of the effect of adoptions upon inheritance see *In re Estate of Wilhelm*, 13 Haw. 206.

As to cases from the mainland, there is no real conflict in the decisions. The differences in the statutes involved account for the different conclusions arrived at. We find no decision directly in point—either for or against the view which we are adopting.

In *Shick* v. *Howe*, 114 N. W. (Ia.) 916, it was held that a child legally adopted in New York was entitled to inherit *through* the adoptive parent the share that that parent would have taken in the intestate's estate had he survived. The statute there provided that the adopter and the minor sustained towards each other the legal relation of parent and child and had all the legal rights and were subject to all the duties of that relation, including the right of inheritance from each other. The court seems to have been led to this conclusion largely, if not wholly, because it deemed itself bound to follow certain prior decisions of its own upon what it regarded as analogous questions. The force of the opinion is weakened by the "concession" "that the weight of the authority is the other way" (the weight of the authority, with all due respect, is not the other way; in truth the state of the authorities is such that it cannot properly be said that the weight of authority is either the one

way or the other, for the cases are all distinguishable on their statutes), and by the evident reluctance of the court to announce the conclusion which it did.

In *Moore* v. *Estate of Moore,* 35 Vt. 98, 99, there was a special legislative act of adoption which provided that the adopted person "is thereby constituted heir at law" of the adopters "in as full and perfect a manner as if she had been the daughter" of the adopters "born in lawful wedlock." The statute by its own language impliedly, but none the less clearly, excluded inheritance through the adopting parents. In the course of its reasoning the court said (p. 99) : "If it were competent for the legislature to enact that Mrs. Wright should be heir at law to Mr. and Mrs. Dunbar and also to be an heir at law to the estate of any other person by representation, as their children would be, by their signifying their assent to the act, they have not done so. She is merely made heir-at-law of Mr. and Mrs. Dunbar, to share as their child. It is not enacted *that she is their child;* or that she is to be considered, and taken in law, to be their child." This is only a side-light; but it tends to show that if the statute had there provided, as does ours expressly, that the child *is* after the adoption the child of the adopting parents, the result would have been a ruling that it was thereby given the same status as any other child of the parents and that she would inherit *through* them as well as *from* them.

In *Barnhizel* v. *Ferrell,* 47 Ind. 335, the statute, a general one, provided that from and after the adoption the child should "take the name in which it is adopted and be entitled to and receive all the rights and interest *in the estate of such adopted father or mother,* by descent or otherwise, that such child would do if the natural heir of such adopted father or mother." Here again the statute clearly contemplated inheritance only

*from* the adopting parents; and the court so held. In this case also the court deemed it worthy of remark that "the act does not provide that he shall be the child of the adopting parent." Why did it do so? And why did the Vermont court do so, if it was not considered that the addition of such a provision would affect the status of the child and lead the court to hold that it could inherit through its adopting parents as effectually as would a natural child? To our minds that provision is extremely important and persuasive. What legislative direction could be clearer? If the legislature says in effect "In all cases in which you are considering whether or not this adopted child is in the same situation as a natural child you must regard him as being in all respects the child of the adopting parents," why should not the direction be carried out literally? It is not ambiguous.

In *Helms* v. *Elliott,* 89 Tenn. 446, the statute provided that the adoption "shall confer upon such child or children the rights of a child or children, as if they were born the child or children of such parent, and capable of inheriting or succeeding to the personal or real estate of the *parent* as are the next of kin." The court correctly held, for the reasons already suggested above, with reference to other similar cases, that the inheriting quality bestowed related to the estate of the adopting parent and not to the estates of other persons. In endeavoring to consider such analogies as are involved in a case of legitimation, the court said: "The event of legitimation makes the legitimated person, to all intents and purposes, the lawful child of the legitimating parents. Such is not the effect of adoption." (p. 452.) But in the case at bar such is the expressed effect of adoption for our statute says that from and after adoption, to all legal intents and purposes, such child is the child of petitioner.

In *Flannigan* v. *Howard*, 200 Ill. 396, the statute pro-
vided: "A child so adopted shall be deemed, for the
purpose of inheritance by such child, and his descendants
and husband or wife, and other legal consequences and
incidents of the natural relation of parents and child, the
child of the parents by adoption, the same as if he had
been born to them in lawful wedlock, except that he shall
not be capable of taking property expressly limited to
the body or bodies of the parents by adoption, nor prop-
erty from the lineal or collateral kindred of such parents
by right of representation." The statute of descent in
Illinois contained a provision that if after the making
of a will a child should be born to the testator, and
no provision be made in such will for such a child, the
will would not on that account be revoked; but unless
it should appear by the will that it was the intention of
the testator to disinherit such child the devises and
legacies by the will granted should be abated in equal pro-
portions to raise a portion for such child equal to that
which such child would have been entitled to receive out
of the estate of the testator if he had died intestate. The
question was whether the adoption of a child by a testator
after the making of his will, no reason appearing for hold-
ing that the testator intended to disinherit it, brought
about the same results under the statute just quoted as
did the birth of a child. This question was answered in
the affirmative. The court said, *inter alia* (pp. 401-403):
"The argument against the plaintiff in error is solely
on the ground that she was not, as a matter of fact, born
of the testatrix and therefore not the sort of a child men-
tioned in the statute of descent" (precisely one of the
arguments made in the case at bar). "By accepted defi-
nitions a child is the immediate progeny of human par-
ents and in its natural meaning the word applies to
offspring born to such parents. By the statute, how-

ever, the relation of parent and child is recognized and declared as legally existing between persons not so related by nature. The statute of descents does not in any way mention this legal relation of an adopted child and the adopting parent, but the right of the adopted child is fixed by the act providing for adoption, which creates in law, the relation of parent and child. * * * An adopted child becomes the lawful child of the adopting parent for all purposes of inheritance and is in the eyes of the law as much the child of such parent as though it had been his own child." (Our legislature has said, in effect, that in the eyes of the law an adopted child in Hawaii is as much the child of the adopting parents as though it had been their own child.) "The authorities are generally to the effect that for all purposes of inheritance an adopted child is the lawful child of the adopting parent, except as otherwise provided by statute."

In *Sewall* v. *Roberts,* 115 Mass. 262, the question was merely whether the adopting child inherited from the adopting parents. The statute was in substantially the same terms as that of Illinois above quoted. The court regarded the language of the statute as "very broad and persuasive" and added that it was "manifestly the intention of the legislature to provide that, with the exceptions named, the adopted child should, in the words of the sixth section, 'to all legal intents and purposes be the child of the petitioner.' "

In *Delano* v. *Bruerton,* 148 Mass. 619, the statute had been altered so that the adopted person was enabled to take only "the same share of property which the adopting parent could have devised by will that he would have taken if born to such parent in lawful wedlock and he shall stand in regard to the legal descendants, but to no other of the kindred of such parent, in the same position as if so born to him." It was held that an

adopted child, who is at the same time the natural grandson of the adopting father, could not under this statute inherit the property of his grandfather in the two-fold capacity of son and grandson,—which was obviously correct.

In *Ross* v. *Ross,* 129 Mass. 243, the statute of Massachusetts was substantially the same as that in Illinois and in 115 Mass., *supra,* and the statute of Pennsylvania, under which the adoption under consideration was effectuated, was the same as the Massachusetts statute except that it (a) omitted the exception to the adopted child's capacity of inheriting from the adopting parent and (b) expressly provided that if the adopting parent had other lawful children the adopted child should share the inheritance with them in case of intestacy and that "he and they shall inherit through each other as if all had been lawful children of the same parent." The question in the case merely concerned an inheritance from the adopting parent but nevertheless some of the language used by the court in its opinion is of interest. It said of the statute of descents, which provided among other things that the descent from an intestate should be "in equal shares to his children, and to the issue of any deceased child by right of representation:" "But this section must be understood as merely laying down general rules of inheritance and not as completely and accurately defining how the status is to be created which gives the capacity to inherit. It does not undertake to prescribe who shall be considered a child, or a widow, or a husband, or what is necessary to constitute the legal relation of husband and wife, or of parent and child. Those requisites must be sought elsewhere. The words 'children' and 'child,' for instance, in the first clause, 'issue,' in the phrase 'if he leaves no issue,' in subsequent clauses, and 'kindred,' in the last two clauses of this section,

clearly include a child made legitimate by the marriage
of its parents and acknowledgment by the father after
its birth under section 4 of the same chapter, or a child
adopted under the provisions of c. 110 of the General
Statutes, or c. 310 of the Statutes of 1871." (pp. 266,
267.)   So also in Hawaii the statute of inheritance merely
lays down general rules of inheritance and says that
"children" or "issue" take under certain circumstances
but does not attempt to define who are those "children"
and who is that "issue." Those requirements must be
sought elsewhere,—for the purposes of the case at bar in
the adoption statute, which in clear language says that
for "*all* legal intents and purposes," including, therefore,
purposes of the construction and application of the
statute of descents, the adopted child *is* the "child" of
the adopting parents.

In *Warren* v. *Prescott*, 84 Me. 483, a bill in equity was
brought to obtain the judicial construction of a will. The
will named one Charles A. Brick as a legatee. He died
before the death of the testatrix, leaving no issue of his
body but leaving an adopted daughter, Alice P. Brick.
The decree of adoption declared, and this declaration
was expressly authorized by the statute, that "from the
date thereof the said child shall be to all legal intents
and purposes, for the custody of the person and all rights
of inheritance, obedience and maintenance, the child of
the aforesaid petitioners, the same as if born to them
in lawful wedlock, except that such child shall not inherit
property expressly limited to the heirs of the body of her
adopters nor property from their lineal or collateral
kindred by right of representation." Under other statutes
of the State the legacy to Brick would lapse if there
were no lineal descendants of the legatee surviving the
testator.   The court held that neither of the exceptions
named in the statute was applicable to the question then,

under consideration and that those exceptions related to the right to inherit as heirs at law and not to the right to take under the will. Citing with approval *Ross* v. *Ross, supra,* the court said (p. 487) : "When an adopted child takes a legacy given by will to one of his adopting parents he does not take as an heir at law of the parent's kindred. He does not "inherit" the legacy from the testator. He takes as a lineal descendant of the legatee, by force of statute. R. S., c. 74, section 10. Not as a lineal descendant by birth, but as a statutory lineal descendant; and as lawfully in the line of descent as if he were placed there by birth," every word of which is applicable in the case at bar. Our section 3246 enables this child to take by representation the share which Sarah Kamakau, if living, would have taken, for he is the "issue" of Sarah. Section 3245 says that the word "issue," as here used, includes "all the lawful lineal descendants" of Sarah. As forcibly stated in *Warren* v. *Prescott,* the minor under these circumstances is a lineal descendant, not by birth but a statutory lineal descendant and as lawfully in the line of descent as if he were placed there by birth. A child is lawful if it is born of its duly married parents. It is equally lawful if the legislature, which has the power to do so, makes it the child of the adopting parents. The result is that it is in either event in the line of descent, and if it is the lawful child, whether by birth or by law, it certainly is a descendant. It cannot possibly be an ascendant. The court in the *Maine* case went on to say (pp. 487, 488), and the words are as applicable in the case at bar as though they had been written for incorporation in the opinion of this court: "It is as competent for the legislature to place a child by adoption in the direct line of descent as for the common law to place a child by birth there. And that is precisely what the legislature has done, and

what it undoubtedly intended to do, when in strong and emphatic language it declared that the legally adopted child becomes to all intents and purposes the child of the adopters, the same as if he were born to them in lawful wedlock. * * * This conclusion is in our judgment as indisputable as a mathematical demonstration."

In *Morse* v. *Osborne,* 75 N. H. 487, 488, the court commenced its opinion by saying that "the status of an adopted child, unknown to the common law, may now be created in nearly all of the States by proceedings authorized by legislative action;" but that "as such status is entirely created by statute, the numerous and conflicting decisions with reference thereto, based upon the varying language found in the different enactments, are of little value in the present inquiry." The court in that case considered the history of the legislation of New Hampshire upon the subject of descents and adoption, and concluded that "whatever right of inheritance the statute of adoption gives the adopted child, the child by adoption cannot, without doing violence to the ordinary meaning of English words, be spoken of as the child of one of the parents by the other" and that an adopted child could not "be said to be the child of the deceased husband by a former wife,"—both of which conclusions were obviously correct but not helpful in the case at bar. The remainder of the discussion in the case would seem to have been obiter.

In *Pace* v. *Klink,* 51 Ga. 221, the special act of adoption gave to "Mathew * * * the name of Downer," and declared that he should "have all the rights and privileges that he would have had had he been born the lawful son of the said Joseph." It also provided that Mathew should be capable of "taking, receiving and inheriting all manner of property under the statute of adoptions, so far as relates to the estate of said Joseph Downer." This

latter provision, however, relates merely to the *property* which could be inherited and not to the source from which the inheritance could come. The question before the court was whether it was one of these rights and privileges that Mathew's children should represent him in the disposition of the estate of Joseph Downer. Answering the question the court said: "Would he be clothed with the full relation of a son to Joseph, if dying before him he could not rely upon the children of his loins standing in his place and representing him in the estate of that father as they would have done had Downer been in fact the father? It is not a question of heritable blood. Mathew was *by the act made* the son, he was clothed with the rights of a son, and had cast upon him the duties of a son. He was made the heir and if his adopted father had died first he would have taken as son and heir. An heir is one who takes an estate by operations of law on the death of the owner. It is not necessary that the heir shall be of the blood of the deceased. Our statute in terms makes the wife and the husband heirs of each other, and if the law were to provide that at the death of any one his estate should go to his nearest neighbor, that neighbor would be the heir." The conclusion was that in the distribution of the property of Joseph Downer the children of Mathew stood in the place of and represented the father and took whatever of said estate he would have taken if living.

In *Wyeth* v. *Stone,* 144 Mass. 441, the statute provided that the adopted child "shall take the same share of property which the adopting parent could have devised by will that he would have taken if born to such parent in lawful wedlock; and he shall stand in regard to the legal descendants and to any other of the kindred of such parent in the same position as if so born to him." Other

provisions of the statute clearly distinguish the case from that now under consideration.

In the *Estate of Sunderland,* 60 Ia. 732, the special statute of adoption provided that the adopted person should inherit from the adopting parents, which of course would exclude all other inheriting quality.

In *Estate of Wardell,* 57 Cal. 484, 489, 490, the statute provided that "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate." The rights of an illegitimate child, and not those of a child by adoption, were being considered and yet the court there said (and it is not without value in the case at bar), considering the meaning of the word "children:" "Hence the term 'children,' as used in section 1307 of the law of succession must relate to status, not to origin—to the capacity to inherit, not to the legality of the relations which may have existed between those of whom they may have been begotten. The word has therefore a statutory and not a common law meaning; and its meaning includes all children upon whom has been conferred by law the capacity of inheritance."

In the case of *Newman,* 75 Cal. 213, the question was merely whether the adopted person inherited *from* the adopting parents. The statute authorized the court to "make an order declaring that the child" (Elizabeth) "be regarded and treated in all respects as the child of the person adopting," and further provided that after the adoption the child and the adopting parent should "sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation." The statute of inheritance made

various provisions for the "issue" of the decedent. The court said that "the use of the word 'issue' in section 1386 does not limit the inheritance to the natural children only. That section prescribes the rule of inheritance. The word 'issue' is there used in the same sense as the words 'child' and 'children.' If the adopted child is by virtue of its status to be regarded and treated in all respects as the child of the person adopting and is to 'have all the rights and be subject to all the duties of the legal relation of parent and child' the right to succeed to the estate of the deceased parent must be included." (p. 219.) The case at bar is stronger in its statutory declaration concerning the status of the child.

Proceeding under the same statute (of California) the court in *Winchester's Estate,* 74 Pac. 10, quoted with approval the language used in the case of *Newman's Estate, supra,* and, citing other cases, further said: "The well settled current of authority" holds that "the word 'issue' includes all descendants; and, as the statute gives to an adopted child the status of a descendant, all the legal consequences and incidents thereof follow the same as though the child was born in lawful wedlock."

In *re Jobson's Estate,* 128 Pac. 938, 939, also from California, the court quoted with approval earlier California cases which held that "adopted children of the daughter of a testator have been held to be included within the term 'any lineal descendant' of the decedent and thus exempted from the burden of a collateral inheritance tax;" and also a case which held that "an adopted child is a 'child' within the meaning of section 1365 of the Code of Civil Procedure and thus entitled to letters of administration of the estate of the adopting parent;" and other cases holding that "by the adoption proceeding the status of the child was wholly changed. It became *ipso facto* the

child of another and ceased to sustain that relation, in a legal sense, to its natural parents."

In *Upson* v. *Noble*, 35 O. St. 655, while one section of the statute authorized the declaration that "such child, to all legal intents and purposes, is the child of the petitioner," a succeeding section provided that by the decree of adoption the child was to be "the child *and legal heir*" of the adopters. Here again, under the language of the statute, the inheriting quality was limited by implication to inheritance *from* the adopters, and the decision was based upon that distinction.

In *Hartwell* v. *Tefft*, 34 L. R. A. (R. I.) 500, it was held "that an adopted child is put by the statute into the status of a child, issue or lineal descendant but not that of an heir of the body" and that therefore "as to a legacy, when a legatee dies before a testator, leaving an adopted child, such child answers the description of a lineal descendant, who may take the legacy under a statute which prevents legacies from lapsing when the legatee leaves lineal descendants."

In *Keegan* v. *Geraghty*, 101 Ill. 26, 33, the court remarked "that there is not uniformity in statutes of adoption throughout the States" and that "in none of them, perhaps, are the new rights and obligations precisely the same." The statute contained the same exceptions, above noted, concerning statutes in other states, against taking property expressly limited to the body or bodies of the parents by adoption and property from lineal or collateral kindred by right of representation.

In *Van Derlyn* v. *Mack*, 137 Mich. 146, the statute prescribed that upon adoption the adopted person should "become and be an heir at law" of the adopters. There by implication inheritance *through* the adopters was excluded.

In *Phillips* v. *McConica*, 59 O. St. 1, the statute made

the adopted person "the child and legal heir" of the adopters and thus carried its own definition against in-. heritance *through* the adopters. So also did the statutes in *Burnett's Estate,* 219 Pa. 599, 601; *Shafer* v. *Eneu,* 54 Pa. St. 304, 306; and *Van Matre* v. *Sankey,* 148 Ill. 536, 558.

In *Meader* v. *Archer,* 65 N. H. 214, the adopted child could inherit only that which the father could have devised by will and it was held that this did not make him an heir of the mother of the adopter.

In *Glascott* v. *Bragg,* 111 Wis. 605, it was held with reference to a statute providing for the revocation of a will by the subsequent birth of a child that the adoption of a child is equivalent to the birth of a child in its effect upon a will made prior to the marriage of the adopting parents.

In *Jenkins* v. *Jenkins,* 64 N. H. 407, 409, the question concerned the construction of the word "issue" as used in a will. It was held that the adoption of an illegitimate child by the father and his wife under the statute did not render such child his "issue" so as to defeat the remainder created by will and made contingent upon his leaving no issue. But in that case "the statute for the adoption of children" (the illegitimate had been adopted) "was enacted in 1862, more than thirty years after the death of the testator" and, of course, "it could not operate retrospectively upon the will already effectual, so as to turn the devise into a different channel from that selected by the testator, nor put it in the power of one having an opposing interest to change, enlarge or prevent the happening of a contingency upon which, as indicated by the testator, the transmission of the estate depends."

In *State* v. *Yturria,* 204 S. W. (Tex.) 315, the statute made the adopted person the "legal heir" of the adopter,

again excluding the thought that he might thereby become an heir *through* the adopter.

Other cases might be referred to bearing to a greater or lesser extent upon the subject under consideration. Suffice it to say that we have not found any against the right of inheritance which is not distinguishable for some one or more of the reasons applicable in the cases above reviewed. Those which have been examined and commented upon above are not, it is appreciated, directly and entirely in point. The reference to some of them has been made in order to distinguish them and to others in order to derive the benefit of such assistance as their reasoning lends to the case at bar.

Even if the word "ancestor" in R. L. 1915, Sec. 3245, were to be regarded, by a strained construction, as referring to the intestate, our conclusion would be the same. If the adopted child under our statute is for all legal purposes the child of the adopting mother, it is likewise for all legal purposes the grandchild of the father of that mother and is his lawful lineal descendant; or, in other words, not unlawful, not collateral, and not an ascendant. As was said by the court in *Humphries* v. *Davis,* 100 Ind. 274, 281: "If there is a child there must be a parent. The status of a child necessarily imports that of a parent. From this conclusion there is no escape unless logic is defied or disregarded. Parent and child are correlative terms, and one relation implies the other. It is logically impossible to conceive the relation of a child without in the same conception implying that of a parent." Similarly, in the *Matter of George Walworth's Estate,* 85 Vt. 322, 329, the court said: "Furthermore the status of parent and child is a correlative one. Where there is a legal child there is a legal father." It is "not to be presumed that the legislature meant to violate logical results by creating the legal relation of child without the corres-

ponding one of parent. As a logical sequence, the children of such legal child are the grandchildren of the legal father." So in the case at bar, if Samuel M. Kamakau was the child of Sarah, and if Sarah was the daughter of the intestate, Samuel was the grandchild of the intestate and was his lawful lineal descendant.

Corpus Juris thus summarizes the law on the subject: "While under the civil law adopted children have the right of inheritance from the adopting parents, no such right has ever been recognized by the common law, and, consequently, in order for an adopted child to inherit from the adopting parent in a jurisdiction where the common law prevails, there must exist at the time of the adopting parent's death a valid statute conferring such right. The status or relationship of parent and child, whether by birth or adoption, is clearly distinguishable from the right of inheritance. Some of the adoption statutes have been considered as not conferring on the adopted child the right of inheritance from the foster parent, but the usual effect of such statutes is to entitle the adopted child to succeed to the estate of the adopting parent in the same manner as if it had been a natural child of such parent. The words 'issue,' 'children,' 'kindred,' and the like in statutes of descent and distribution, include adopted children in the absence of anything indicating a contrary intent." 1 C. J. 1398, 1399.

The judgment appealed from, recognizing in the adopted child the right of inheritance through its adoptive mother from the intestate, is affirmed.

*I. M. Stainback* (*W. H. Beers* with him on the brief) for plaintiffs in error.

*N. W. Aluli* (*H. G. Middleditch* with him on the brief) for defendant in error.