## IN THE MATTER OF THE TRUST ESTATE OF GEORGE H. HOLT, DECEASED.

### Nos. 3060 and 3061.

ARGUED MAY 21, 1957.  DECIDED OCTOBER 4, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal from an order of the circuit judge on a bill for instructions with respect to the third article of the will of George H. Holt, which reads as follows:

"3rd: All the rest, residue and remainder of my estate I give, devise and bequeath to my trustees hereinafter named, and their successor or successors in trust: In trust to hold, care for and manage the same for as long a period as is legally possible; determination or ending of said trust to take place when the law requires it under the Statute; and during the pendency of said trust to pay the income from the same to my said wife during her life, or so long as she shall remain my widow, and after her death or future marriage, to stand possessed thereof, in trust as aforesaid, and to pay the income to all of *my heirs in equal shares per stirpes,* and upon the final ending of the term of said trust, as aforesaid, to divide my trust estate among the persons entitled to the same at that time under the law per stirpes." (Emphasis added)

The will was made in 1914. Testator died in 1929. He was survived by his wife, Kemilia, and eleven children, George, Jr., Christopher, James, Lydia, Severina, Jane, Wattie, Rose, Charles, Robert and Elizabeth. The widow died in 1934. All children survived her.

After the death of the widow and before the filing of the bill for instructions, five children died, Rose in 1934, Elizabeth in 1943, Charles in 1946, Robert in 1948 and Christopher in 1949. Elizabeth died without issue. Rose, Charles and Robert left natural children surviving them.

Christopher left his wife, Julia, and an adopted daughter, Alberta, surviving him. Alberta is the natural child

of Severina. She was born in 1926 and adopted in 1927. Testator encouraged the adoption. Christopher left a will in which he bequeathed $2,500 to Alberta and gave the residuary estate to his widow.

The income from the trust was paid to Kemilia during her lifetime. After her death and until the death of Elizabeth, the income was divided into eleven parts and paid to testator's surviving children and the issue of his deceased children per stirpes. Thereafter, until Christopher's death, the income was divided into ten parts and paid to testator's surviving children and the issue of his deceased children per stirpes.

Thus, at the time of his death, Christopher was entitled to one-tenth of the income. When Christopher died, the trustee, being in doubt as to who was entitled to the share of the income which would have been paid to Christopher had he continued to live, requested the instruction of the court.

The circuit judge decided as follows:

"A. The income given to Christopher did not terminate at his death, but continues so long as the trust continues. *Hawaiian Trust Company, Limited* v. *McMullan,* 23 Haw. 685.

"B. Since Christopher's interest in the income was for the full period of the trust, his interest was an estate of inheritance which he could dispose of by will or by assignment. *Hawaiian Trust Company, Limited* v. *Galbraith,* 25 Haw. 174.

"C. Had Christopher died intestate, Alberta, as an adopted and only child, would have inherited his share of the income, subject, of course, to dower. *Estate of Kamauoha,* 26 Haw. 463.

"D. Christopher's interest in the income, being a vested interest—an estate of inheritance—went by his will to his widow, Julia. *Walker* v. *O'Brien,* 35 Haw. 13.

"E. At the time of distribution, upon termination of the trust, Alberta and her children will be in the line of descent, and entitled to a share of the corpus, the amount to be taken to be determined at that time dependent upon who is alive to take and the degree of kinship. *Estate of Kamauoha* and *Walker* v. *O'Brien, supra.*"

The trustee and two of testator's children, Lydia and Jane, appealed from the decision and the order which was entered pursuant thereto.

The trustee appealed on the ground that he has a pecuniary interest in the final outcome of the case. The trustee states in his brief that Rose, Charles and Robert left surviving spouses. Upon the death of Rose, Charles and Robert, the trustee has been paying to their children per stirpes the shares of the income which would have been paid to the parents if they continued to live. He has not paid any part of such shares to the surviving spouses. In the circumstance, if the interests of testator's deceased children in such shares were estates of inheritance and subject to dower or courtesy in favor of the surviving spouses, the trustee would be subject to the claims of the surviving spouses. The record is silent as to whether Rose, Charles and Robert left surviving spouses. However, we deem it unnecessary to have proof that they left surviving spouses. Such fact is immaterial in view of our conclusion which is stated below.

Lydia and Jane appealed on the ground that Christopher's share was a life estate which terminated upon his death without natural issue and passed on to testator's surviving children and the natural issue of his deceased children per stirpes.

The will provides that after the death of the widow the income of the trust be paid to testator's heirs in equal shares per stirpes.

When a gift is made in a will to heirs of a designated

person, the word "heirs" means persons who succeed to the property of such designated person under the law which governs intestate succession. (*Thurston* v. *Allen,* 8 Haw. 392; *Carter* v. *Carter,* 10 Haw. 685; *von Holt* v. *Dreier,* 34 Haw. 131)

Heirs of a designated person are ordinarily determined as of the date of death of such person, unless the testator shows a contrary intent. This court has held that where a gift to heirs is postponed until the termination of a preceding estate a contrary intent is shown and that the heirs will be determined as of the date of the termination of the preceding estate. (*Auld* v. *Andrade,* 31 Haw. 1; *Crescent City Motors* v. *Nalaielua,* 31 Haw. 418)

In this case the testator gave the income of the trust to his widow for life and thereafter to his heirs. So, the heirs were, initially, determinable as of the date of death of the widow. Testator's heirs on such date were his eleven surviving children.

If the gift, after the death of the widow, were a gift of the corpus, no further problem would arise. In such case the right to the corpus in existence on the date of the death of the widow would vest in the heirs initially determined, that is, in testator's eleven surviving children, and such corpus, together with any income that might have accrued thereon after the death of the widow, would have been distributable to such heirs in equal shares.

But here there is an intermediate gift of income which accrued after the death of the widow and which will accrue until the corpus is ultimately distributed upon the termination of the trust. When the testator provided for the payment of such income to his heirs, did he intend that the word "heirs" be limited in its application to persons who were initially determined to be his heirs upon the death of the widow, or did he intend that the word include persons who were his heirs from time to time as the income accrued?

If the testator intended the former, then each of the persons who were initially determined to be testator's heirs would have an estate of inheritance in the right to a proportionate share of the income accruing during the entire period of the trust, including the income accruing after such heir's death. Such heir might assign his right to the share of the income. If such heir died without assigning his right, the right would go to his estate. (*Hawaiian Trust Company, Limited* v. *McMullan,* 23 Haw. 685; *Hawaiian Trust Company, Limited* v. *Galbraith,* 25 Haw. 174) If such were the testator's intent, it is possible that such heir's right to the share of the income would go, after his death, to persons who would not be in the line of descent from the testator.

If the testator intended the latter, then each of the persons who were initially determined to be his heirs would only be entitled to his proportionate share of the income which accrued during his life. Such heir would have no control over the disposition of the share of the income which accrued after his death. The share of the income accruing after his death would go to persons who would be testator's heirs and who traced their descent through such heir. (*Cooke Trust Company, Limited* v. *Hawaiian Trust Company, Limited,* 38 Haw. 96.) If such were the testator's intent, the payment of the income would be made only to testator's descendants in such manner that the descendants in each line of descent would receive the same fractional share. There will be no possibility of any portion of the income going to persons who are not descendants of the testator.

In this case the construction of the provision with respect to the distribution of the corpus upon the termination of the trust is not before this court. However, a testator's intention is ascertained from a consideration of the will as a whole and not from its disjointed fragments.

(*Estate of Deering,* 30 Haw. 217; *Bishop Trust Company, Limited* v. *Smart,* 39 Haw. 641; 2 *Page on Wills,* 3d Ed., p. 825.) The provision for the distribution of the corpus gives an indication as to what the testator had in mind with respect to the payment of the income.

The testator provided that upon the termination of the trust the corpus be divided among "the persons entitled to the same at that time under the law per stirpes." We construe this provision to mean that the corpus is to be distributed, per stirpes, to persons who are testator's heirs at the termination of the trust. If the provision for the payment of the income is considered in connection with the provision for the distribution of the corpus, it is apparent that the testator intended to benefit all persons who were his heirs at any time between the date of the death of the widow and the termination of the trust. There is no indication in the will that the testator intended to benefit only persons who were his heirs at the time of the death of the widow and persons who were his heirs at the termination of the trust and to exclude from its provisions persons who were his heirs at any time during the intervening period.

The foregoing construction of the provision for the payment of the income is the same construction that has been placed by the trustee. Thus, when Rose died, the trustee paid the share of the income which was formerly paid to Rose to her children, who upon her death became testator's heirs per stirpes through her. The trustee followed the same procedure when Charles and Robert died. Appellants Lydia and Jane agree with this construction. However, they take the position that Alberta is in a different position from the children of Rose, Charles and Robert. It is their contention that Alberta is not an heir of the testator per stirpes through Christopher because she is not Christopher's natural child. This raises the

question whether an adopted child can inherit not only from his adoptive parent but also through his adoptive parent and thereby be in a line of descent from the ancestor of his adoptive parent.

When the testator made his will in 1914, an adopted child could inherit only from, and not through, his adoptive parent. Act 83 of the Session Laws of 1905 provided that an adopted child "shall inherit estate undisposed of by will from its adopting parents the same as if it were the natural child of such adopting parents" and that "for all other purposes an adopted child and its adopting parents shall sustain towards each other the legal relation of parents and child and shall have all the rights and be subject to all the duties of that relation the same as if such child were the natural child of such parents." This court stated in *Estate of Kamauoha,* 26 Haw. 439: "The rights declared by section 2994 [S. L. H. 1905, Act 83] to belong to an adopted child did not include the right of inheritance through its adoptive parent from the father, for example, of the adoptive parent. In other words, it constitutes the adopted 'child' for *some purposes* the 'child' of the adopting parents but clearly does not constitute it such 'child' *for all purposes.*"

In 1915 the legislature enacted a new law to regulate the adoption of minors in which it provided that the judge granting the adoption shall make an order declaring that from the date of adoption "to all legal intents and purposes" the adopted child is the child of the adopting parent. (S. L. H. 1915, Act 47) This court has construed this provision to extend to an adopted child the right to inherit through the adopting parent. In *Estate of Kamauoha,* this court held: "The command is that for *all* purposes, not for some only, is the adopted person the child of the adopter. To say that he may be the child of the adopter for the purpose of inheriting *from* the adopting parent, but

not for the purpose of inheriting *through* the adopting parent, is to deny to the decree, made in absolute obedience to the statute, all of the legal effect which is due to it." This provision was in effect when Alberta was adopted and when the testator died. As a matter of fact it was in effect until 1953 when the legislature resolved all doubts concerning the legal effect of adoption by providing that a legally adopted child shall be considered to be a natural ‚child of the whole blood of the adopting parent or parents under the provisions relating to the descent of property. (S. L. H. 1953, Act 115)

Appellants Lydia and Jane argue that *Estate of Kamauoha* is not applicable here because it involved disposition of property in case of intestacy and not the construction of a trust. They are supported in their argument by the trustee who states that the application of that decision must be confined to intestate matters where heirship is determined by statute. Such argument has cogency if the language in the will could be construed without reference to the law relating to intestate succession. But when the testator used the word "heirs" without indicating any intent to ascribe some particular meaning of his own to it, we must necessarily resort to our intestacy law in order to determine the persons who come within the meaning of that word.

The applicability of *Estate of Kamauoha* to this case may be questioned not on the ground stated by the appellants but by raising the following question: When the testator used the words "my heirs," did he mean his heirs as determined by the law in force at the time of the execution of his will or his heirs as determined by the law in force at some later date, either the date of his death or the date of death of Christopher? If the testator meant the former, *Estate of Kamauoha* has no application because the law at the time of the execution of the will was that

an adopted child could not inherit through its adopting parent. If the testator meant the latter, *Estate of Kamauoha* has a controlling effect in this case, for it then makes Alberta, in legal contemplation, his descendant and heir through Christopher.

We are of the opinion that the law to be applied in this case is the law that was in force when Christopher died.

The testator made a gift to his heirs, without giving any indication regarding the sense in which he used that word. Where no light is thrown by the testator, the following remark of Mr. Justice Cardozo in *New York Life Insurance & Trust Co.* v. *Winthrop*, 237 N. Y. 93 at 109, 142 N. E. 431 at 434, aptly describes the situation: "In all likelihood, he simply failed to think the subject through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law." The authors of the chapter on "Gifts to 'Heirs' and the Like" in American Law of Property, § 22.57, state: "Also the average testator who uses such words usually does so after he has exhausted his specific desires as to the beneficiaries of his bounty and he has in effect said, 'Now let the law take its course.' " So, here the testator let the law take its course. The law regarding intestate succession, like any other law, is subject to change by the legislature from time to time. By leaving the determination of a taker under his will to the law regarding intestate succession, the testator took a chance that such law might be changed before the gift took effect.

In *Kohler's Estate*, 199 Pa. 455, 49 Atl. 286, the lower court held: "The will of John Kohler, father of the cestui que trust, was written thirty-six years before the decree of adoption, and that event, therefore, was not reasonably within the contemplation of the testator. But, as he gave the estate to those persons to whom the law would give it in the case of intestacy, he cannot be said to have had

any particular class of heirs or next of kin in view, and he committed the question of determining who should take to the law itself." In affirming this decision, the appellate court stated: "And it is only necessary to add that a testator who commits the distribution of his estate to the law upon the happening of an event necessarily future must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime."

In *Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127 at page 138, the court stated: "Of course the donor when he executed his deed could not apprehend that at a given date many years hence statutes would be enacted providing for the adoption of children and conferring upon them the right of inheritance. But, upon the other hand, he must be assumed to have known that the lines of inheritance were governed by statute and at any time could be changed. He was evidently interested in providing for the life beneficiary in a certain definite manner down to the moment of her death, and did so. But after that apparently he had no desire to limit the succession to his real estate to any particular definite line of persons. He directed generally that it should go to her heirs at law; that is, to the persons whom the law should designate as her heirs when the time arrived. He threw the responsibility of selection upon the law." This case involved a deed of trust and not a will. But the applicable principle is the same.

It may be mentioned that in *Kohler's Estate,* the adoption in question took place after the death of the testator. Here, the adoption of Alberta took place two years before testator's death. The testator encouraged the adoption. At the time of the adoption, *Estate of Kamauoha* had already been decided. The testator could have clarified the situation by executing a new will or codicil if he did not desire Alberta to be his heir through Christopher. But he did not do so. In this respect, this case is like *McCor-*

*mick* v. *Hall,* 337 Ill. 232, 168 N. E. 900, where the court, in applying the law in force at the time of testator's death in preference to the law in force when the will was executed, stated: "In this case the Statute of Descent in force at the time of the testator's death became effective on July 1, 1923 * * *, and he did not die until nearly two years later. In the meantime he was afforded ample opportunity to change his will. He did not do so, and it will be presumed that he intended the appellant to take according to the Statute of Descent as later amended."

We hold that the interest of Christopher in the income of the trust was not an estate of inheritance and that after his death Alberta became entitled to such interest as testator's heir per stirpes through him.

The order of the circuit judge is reversed and the case remanded with instructions to enter an order in accordance with this opinion.

*J. Harold Hughes* (also on the briefs) for respondents-appellants *Lydia Holt Wright* and *Jane Holt Thurston* in Case No. 3060 and respondents-appellees *Lydia Holt Wright* and *Jane Holt Thurston* in Case No. 3061.

*Robert G. Dodge* (*Heen, Kai, Dodge & Lum* on the briefs) for Trustee *A. D. Castro,* petitioner-appellee, in Case No. 3060 and Trustee *A. D. Castro,* petitioner-appellant, in Case No. 3061.

*Henry T. Hirai* (*Mirikitani & Hirai* on the brief) for respondent-appellee *Alberta Rebecca Holt* in Cases Nos. 3060 and 3061.

*Samuel Landau,* guardian ad litem (also on the brief) for *Halford Kekuewa, Wattie V. Holt, Merilyn E. Holt, Arletta Yvonne Holt, Glenda Beryl Holt* and *Robert William Holt, Jr.,* in Cases Nos. 3060 and 3061.