CASE 33—CONSTRUCTION OF WILL—MARCH 22.

# Cooksey, Etc. v. Hill, Etc.

### APPEAL FROM WARREN CIRCUIT COURT.

DEVISES—CONSTRUCTION—"CHILDREN," DESIGNATING PURCHASERS.—
Under the will of John R. Hill, which provided that his realty
should be rented for five years to pay his debts and after that
period a certain portion of same should be given to his daughter
Eva to vest in her to her separate use, but in the event she
should marry and die without children and leave a husband
surviving her, then remainder over to the husband for and
during his natural life with remainder to the testator's son,
Bradley, if living, or, if dead, to his children, if any; or, if
none, then to the grandson of the testator, Joe Smith; or, if the
said daughter should die leaving children, then the land should
go to the said children, the child of said Eva surviving her
and living beyond the five-year renting period provided for
in the will, took as purchaser under the will of his grandfather;
and upon his death his brothers and sisters of the half-blood
inherited the land to the exclusion (first) of the testator's son,
Bradley, and (second) of the devisees of his daughter, Eva.

MITCHELL & DUBOSE FOR THE APPELLANTS.

1. Dying without issue or children held to refer to death at any
    time. Hart v. Thompson, 3 B. M., 488; Moore v. Moore, 12
    B. M., 660; McKay v. Merrifield, 14 B. M., 260; Harris v. Berry,
    7 Bush, 114; Montgomery v. Montgomery, 11 Ky. Law Rep.,
    88; Varble, Jr., v. Phillips, 14 Ky. Law Rep., 364.
2. The testator makes one disposition of the estate in case his
    daughter dies without children, and another if she dies leaving
    children. This admits of but one possible solution—that he
    was providing for a successor upon her death, whenever it oc-
    curred. Deboe v. Lowen, 8 B. M., 623; McNair v. Kawking,
    4 Bibb., 390; Carroll v. Carroll, 12 B. M., 642; Chrystie v. Phybe,
    19 N. Y., 344; Vanderzee v. Singerland, 103 N. Y., 47; O'Ma-
    honey v. Burdett, 7 L. R., 386.
3. That the testator did not intend the quality of the estate de-

vised his daughter to be of one kind if she married and died within the first-year renting time, is shown by the extrinsic facts, the literal meaning of the words, the matter under consideration, the context, and the devise to her children. Wren v. Hynes, 2 Met., 132; Barclay v. Dupuy, 6 B. M., 98; Allen v. Farthing, 2 Mad., 310; Child v. Giblett, 3 My., & M., 71; Cooper v. Cooper, 1 K. & I., 658.

4. It is certainly incumbent on appellees to show from the subject matter of the devise, or its purposes and objects, or the context or other provisions of the will that the words employed are not to be understood in their plain, literal meaning. Williamson v. Williamson, 18 B. M., 377; Jarman's Rules.

5. The fact that the testator did not foresee all the consequences of his disposition is not reason for varying the plain meaning of the words. Jarman's Rules; Moon v. Stone, 19 Grattan, 326.

6. A direction by the testator that the lands shall be rented for five years for the purpose of obtaining money to pay the indebtedness did not create another estate, nor defer the descent of title nor possession of the lands to the devisees. Bowling v. Dobyns, 5 Dana, 440; Hughes v. Hughes, 12 B. M., 115.

7. In other portions of the will the testator clearly created estates, the final vestiture of title to which would remain contingent for many years, why may we not assume such was his intention in the devise under consideration? Barclay v. Dupuy, 6 B. M., 98; Wren v. Hynes, 2 Met., 132.

8. There can be no separate estate in the absence of the conjugal tie. Duke's Hrs. v. Duke's Devisees, 81 Ky., 312.

9. Rules of construction must give way to the intention of the testator; they are to be used as lamps to illuminate the way; not bars to prevent the intention of the testator from being carried out. Wills v. Wills, 85 Ky., 486.

10. The estate devised the daughter was limited by an executory devise to her children, if she left any surviving.

EDWARD W. HINES ON SAME SIDE.

1. The will vests title in the daughter, the fee subject to defeat by marriage and death leaving either husband or children.

2. To make the words "should die leaving children" in the devise to his daughter Eva, refer to a dying within the five years renting period, would be to deprive the whole clause of its natural meaning, would be inconsistent with other provisions of the will.

and would fail altogether to explain why there was a gift-over upon Eva's death after marriage and no provision for some one to take in the event of her death before marriage and no gift-over upon Bradley's death. Wellford v. Snyder, 137 U. S., 521.

3. The rule is that if there is a devise to a class with a gift-over to the survivors in the event of the death, to one or a class without issue, the gift-over will take effect only in the event of the death in the life-time of testator or before the termination of the particular estate if there be one. Birney v. Richardson, 5 Dana, 424; Pool v. Benning, 9 B. M., 623. The case of Thackston v. Watson, 84 Ky., 206, seems to have overlooked the fact that the rule was restricted to a devise to a class. On this distinction, 3 Jarman on Wills, ch. 47-8-9; 29 Am. & Eng. Ency. of Law, 486, 494, 502; Pruitt v. Holland, 92 Ky., 641; Wills v. Wills, 86 Ky., 486; the case of Hoods, &c., v. Dawson, 17 Ky. Law Rep., 880, and Crozier, &c., v. Cundall, &c., 18 Ky. Law Rep., 116, illustrate the rule which applies where there is a gift-over in the event of death coupled with a contingency, the former being a case where there was a gift-over upon the death of a remainder-man without issue, and the latter a case where there was no intervening particular estate. The distinction between the case of Wills v. Wills and the case at bar is this—in the latter the words relating to death are always coupled with other contingencies, while in the former case they were not, the expression there being simply "in case of the death."

LEWIS McQUOWN FOR APPELLEE HILL.

1. A devise to one and his children, if he had any, created a fee, and not life estate. Bradley v. Skilman, 3 Ky. Law Rep., 734; Deboe v. Lowen, 8 B. M., 624; Wills v. Wills, 85 Ky., 486.

2. The words dying with, or without issue, mean, where the devise is direct and immediate, death in the life-time of the testator; but where the distribution or possession of the estate is postponed during a particular estate, then the dying means death after that of the testator and before the expiration of the particular estate. Birney v. Richardson, 5 Dana, 424; Wills v. Wills, 85 Ky., 486; Martin v. Renaker, 10 Ky. Law Rep., 469; Trabue v. Terry, 10 Ky. Law Rep., 345; Cornwall v. Falls City Bank, 92 Ky., 381; Pruitt v. Holland, 92 Ky., 641; Ferguson v. Thomason, 87 Ky., 519; Wilson v. Bryan, 90 Ky., 482; Duncan v. Kennedy, 9 Bush, 580; Hughes v. Hughes, 12 B. M., 115; Webster

v. Webster, 15 Ky. Law Rep., 97; Scott v. Best, 15 Ky. Law Rep., 795.

3. Where there is a clear gift, it can not be cut down by anything subsequent, unless the intention to do so clearly appears. Ranfield v. Ranfield, 8 H. L. Cas., 235.

GRIDER & MOSS FOR APPELLEE SMITH.

1. At the time of the death of Eva Hill Cooksey she was the absolute owner of the land with fee simple title thereto and Clinton Hill Cooksey at his mother's death became the owner of said land devised from his mother and not by virtue of his grandfather's will and by the provisions of section 1401, Kentucky Statutes (Clinton Hill Cooksey dying in infancy), said land descended to his kindred upon his mother's side that is to his mother's brother, H. Bradley Hill, and to his mother's nephews, Joseph H. Smith, a moiety each. These conclusions follow from the following propositions which are the result of the various decisions in this State:

(a) That when an estate is given by will, which may be defeated upon the happening of a contingency, and there is no other period apparent, in which the event shall occur, it shall refer to an event happening within the life-time of the testator.

(b) If it is apparent from the context of the will that an event was referred to as occurring after the life-time of the testator, and an intermediate estate intervened before the first devisee should come into possession, it should be construed as referring to an event happening after the death of the testator, and before the devisee came into possession.

(c) The contingency will not be referred to the happening of an event at an indefinite time, however remote, unless the will plainly shows on its face that this was the testator's intention; especially when there are other prior periods to which the contingency could apply as shown in the will.

Citations:  Birney v. Richardson, 5 Dana, 424; Pool v. Benning, 9 B. M., 623; Hughes v. Hughes, 12 B. M., 115; Duncan, &c., v. Kennedy, &c., 9 Bush, 580; Parish, &c., v. Vaughan, &c., 12 Bush, 97; Wren v. Hynes' Admr., 2 Met., 129; Strossman, *ex parte*, 6 Ky. Law Rep., 738; Martin v. Renaker, &c., 10 Ky. Law Rep., 469, 345, 563; Thackston v. Watson, 84 Ky., 210; Wills v. Wills, 85 Ky., 492; Pruitt v. Holland, 13 Ky. Law Rep., 867; Webster's Trustee v. Webster, &c., 15 Ky. Law Rep., 97.

WRIGHT & McELROY ALSO FOR THE APPELLEE, J. H. SMITH.

There is nothing in the. will showing that the testator intended to limit his daughter Eva to an estate for life, but it was the obvious purpose of the testator that she should take a fee simple. Wills v. Wills, .85 Ky., 486; Jarman on Wills, vol. 2, p. 752-3 (5th ed.); Hughes v. Hughes, 12 B. M., 116; Wren v. Hynes' Admr., 2 Met., 129; Birney v. Richardson, 5 Dana, 432.

W. S. PRYOR FOR APPELLEE IN A PETITION FOR A REHEARING. (LEWIS McQUOWN OF COUNSEL.)

It was not the purpose of the testator to confine his daughter Eva to a life estate in the land devised to her. If the estate in Eva was a defeasible fee, the title must necessarily remain in Eva, and never was divested because she died leaving children. See Wills v. Wills, 85 Ky., 486; Deboe v. Lowen, 8 B. M., 620; Crozier v. Cundall, 99 Ky., 202.

EDWARD W. HINES FOR APPELLANT IN RESPONSE TO THE PETITION FOR A REHEARING.

A fee may be created subject to be defeated upon marriage. Wellford v. Snyder, 137 U. S., 521; and such a provision is neither against public policy nor unreasonable.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The will of John R. Hill, after reciting that he was weak in body, providing for the sale of his personalty, with some reservations for his wife. and daughter, and using certain expressions, which indicated his expectation of death in the near future, provided as follows:

"Item 7th. It is further my will and I give to my grandson, Joseph Smith, son of Charles and my deceased daughter, Lelia Smith, the tract or parcel of land which I purchased at commissioner's sale of the land of B. C. Smith, deceased, containing about one hundred and twenty-six acres, and enough of other of my lands adjoining said one hundred and twenty-six acres as will make, including the one hundred and twenty-six acres, one hundred and thirty acres. . . . and if my said grandson Joseph Smith should

die before his father, Charles Smith, without children, then in that event, and I so will, that Charles Smith, his father, shall have said lands during his natural life, and at his (Charles Smith's) death said lands to revert to my son, Bradley, and my daughter, Eva, equally. If either one of them should not be living without any children, then the whole to go to the survivor; and, if both be dead leaving children, then said lands to go to their children; and, if said Eva, Bradley and Joseph Smith should all die without heirs of their body, then I desire, after the life estate of Charles Smith in said one hundred and thirty acres of land, shall, in that event, go and descend to my next kin.

"Item 8th. It is further my will and I give to my beloved wife, Addie, one-third in value of the remainder of the lands, after taking out the one hundred and thirty acres above mentioned, including the house and garden and out-houses, for and during her natural life, and at her death to be equally divided between my two children, Bradley and Eva.

"Item 8th. It is further my will and I give to each one of my said children, Eva and Bradley, all the balance of my lands equally.

"Item 9th. It is further my will, and I so direct, that the lands which I have given as above to my said daughter, Eva, shall vest in her, for her separate use and benefit, free from any husband she may have; but in the event she should marry and die without any children, and leave a husband surviving her, then I desire that such husband shall have the lands so given as above to said Eva for and during his natural life, and at his death to go to my son Bradley, if living; or, if he be dead, then to his children, if any, and, if none, then to my grandson Jo

Smith; but, if my said daughter should die leaving children, then I desire same to go to said children; but if it should so turn out that said grandson, Joseph Smith, should get said lands, and he should die without child or children, then I direct that said lands go to the next of my kin.

"Item 10th. It is further my will, and I so direct, that before any of the lands before mentioned shall be divided I desire, and so direct, that all of the same shall be rented out for the space of five years, for the purpose of raising a sufficient amount of money to pay all of my just debts that may remain after the proceeds of the personal property shall be applied thereto, except the house, and about five acres for garden purposes, for my wife and family, but out of the proceeds of said renting a sufficiency shall be applied for the comfortable support and maintenance of my beloved wife and daughter, Eva, during said five years."

His wife, his son and daughter—of age and unmarried—and his grandson, Jo Smith, survived him. The will was probated in October, 1879. In 1881, Eva was married to George C. Cooksey, who had four children—the appellants in this case—by a former marriage. Cooksey died in 1886, and Eva in 1889, leaving one child, Clinton Hill Cooksey, who died in 1895. It appears, therefore, that both Eva and her son survived the five years renting period provided for by the will. By last will, Eva Cooksey devised the land she took under her father's will to her son, Clinton. This suit was brought by Bradley Hill, the testator's son, claiming that under the will of John R. Hill, Eva took a fee-simple estate in the lands after the expiration of the five-year period; that her will operated to vest the estate in her son, Clinton; and that he having died in infancy, and the property having come to him by devise from his mother, it descended to Bradley Hill as next of kin, under section 1401, Kentucky Statutes.

Jo Smith, the grandson of testator and nephew of Bradley and Eva, was made defendant, and set up his claim to an undivided one-half of the property, as next of kin on the mother's side.

The appellants, who are brothers and sisters of the half blood, filed · an answer and counterclaim, claiming that Clinton did not take the land by inheritance from his mother, nor as devisee under her will, but became entitled by purchase under the will of his grandfather, and that as next of kin they inherited the land from him, and were entitled to its possession; as section 1401 applies only to real estate derived by gift,· devise, or descent from one of the parents.

On demurrer to the answer and counterclaim, the chancellor held that Eva took an estate in fee, under her father's will, and that Clinton took title under his mother's, and not his grandfather's will, and that, as next of kin to the mother, to whom, under statute cited, the estate would pass, Bradley Hill and Jo Smith shared equally.

The question for decision is whether the will of John R. Hill passed an absolute fee to his daughter, Eva, in her share of the land, or a lesser estate; and this depends upon the intent of the testator, to be gathered from the entire will.

A number of cases have been cited on behalf of appellee in support of a general rule of construction claimed by him to exist. But, as said in the case of Wills v. Wills, 85 Ky., 492, [3 S. W., 902], quoting from Hughes v. Hughes, 12 B. Mon., 115: "The application of all rules of construction must necessarily be varied by the language used by the testator, the object being to arrive at his intention, to be gathered from the entire will." It is contended for appellee that this court has frequently held the words

"dying without issue" and similar expressions in wills to refer to the death of the devisee before that of the testator, or during the existence of some particular estate provided for, upon the expiration of which the devise was to take effect, and there are a number of cases that support this contention. But in the case at bar a number of expressions are used which, in our judgment, render the construction contended for by appellee impossible.

It seems conceded by both sides that one of the controlling motives with the testator was to insure that part of his property which he devised to his daughter and his grandson being enjoyed by those of his own blood, and this desire upon his part is manifest from the numerous provisos inserted in the instrument to take effect upon the happening of various contingencies. He seems to have had confidence in the business ability of his son, and gave him an absolute fee in his share. He provided liberally for his grandson, the son of his deceased daughter, and, in the event of his (the grandson's) death before his father (the testator's son-in-law) without children, giving to the son-in-law an estate for life, with the further provision that at his death it should revert to Bradley and Eva. Clearly, the contingency upon which the remainder to the son-in-law was to take effect was the death of the grandson without children before Charles Smith's death, whenever that might happen; then there is remainder to Bradley and Eva; and, if either one of them should not be living (at the death of Charles Smith), the whole to go to the survivor; then, if both be dead, leaving children (at Charles Smith's death), the land to go to their children. And then it is provided that if Eva, Bradley, and Joseph should all die, without heirs of their bodies, before the death of

Charles Smith, the land was to go to the testator's next
of kin, after Charles Smith's life estate should expire.

It will readily be seen, from an examination of item sev-
enth, that the testator was providing for a number of con-
tingencies which might occur a long time after his death,
and that there was no common period fixed by the will to
which we may refer the taking effect of the various re-
mainders.    This appears also by item eighth, where the
land devised to the wife for life was, at her death, to be
equally divided between his two children.    By the second
item eighth he provided for an equal division of the residue
of his lands between his two children.    No restriction
whatever was placed upon the devise to Bradley, but re-
strictions were, by item ninth, placed upon the share de-
vised to Eva, and it is to obtain a proper construction of
these restrictions that this suit is brought.

First, he provides that her share shall be separate estate,
in the event of her marriage. Then he provides for two con-
tingencies: First, the contingency that she should marry and
die without children, leaving a husband.    In that event,
"*then*" the husband was to have Eva's share of the land
for life, and, at his death, to go to Bradley for life, or, if
he should be dead, "*then*" to his children, if any, and, if
none, "*then*" to the grandson, Jo Smith.    It is claimed by
appellant that this contingency of marriage, death with-
out children, and a surviving husband, as well as the other
contingencies, was to occur within the five-year period
provided for by item tenth.    It will be observed that the
remainder provided for in the first part of item ninth is not
predicated upon a certainty, as in the case   where   the
phrase was, *in case she die*, but upon a contingency which
may or may not happen.    And so of the other contingency
provided for, viz., if his daughter should die leaving chil-

dren, *"then"* the land was to go to the children, without limitation. But if it so turned out that the grandson, Joseph Smith, should get the lands, and he should die without child or children *"then"* the lands were to go to the testator's next of kin. It seems reasonably evident that, in the event she died childless, with a surviving husband, he did not desire her to have the power to devise the land away from his blood.

It is true that our construction of his intent will result in the lands going to those not of his blood, a result which he doubtless would have provided against but for the rule against perpetuities. But "the fact that the testator did not foresee all the consequences of his disposition is not a reason for varying it." Jarman, rule XIII. He provided against that result happening through the action of any of his descendants, so far as he had power to control the devolution of his estate.

We can not concur with counsel for appellee that item tenth was intended by the testator to fix a period within which the contingencies provided for were to take place, in order to give effect to the remainders over, or that it was intended to do anything more than provide a means of paying his debts—for the payment of which his personalty was insufficient—without impairing his landed estate, which he seems to have desired to go to his devisees intact.

Still less can we reach the conclusion that the devise over was intended to have reference to the death of Eva before the testator. The expressions used in the will indicating the expectation of early dissolution forbid such a conclusion. He makes provision for such contingencies as "If I should die before the time of selling hogs;" "before time to sow wheat;" "before time to kill hogs for next year,"—indicating that he had in contemplation his death soon after the publication of his will.

Again, it seems highly improbable that he intended to provide for her potential husband in the event she should marry and die without any children during the five-years renting period, but intended to make no provision for her husband in case that event happened immediately after the expiration of the five years; or that he intended to secure an estate to her children if she died during the five years leaving children, but to make no provision for them in case her death, leaving children, occurred after that period. The manifest purpose of the testator was to secure the land for the maintenance of his daughter during her life, and that it should go to her children on her death, provided she left children.

The case is argued on behalf of appellee upon the theory that Eva necessarily took either a life estate or a fee simple. This, however is not correct. It will be observed that one contingency is not provided for, viz., her death unmarried and childless. And this leads us to the conclusion that the provision made by the second item eighth, giving the residue of the land equally to Bradley and Eva, is restricted by the provisions of item ninth, as to the land devised to Eva, into a defeasible fee, subject to be devested upon the happening of either of two events—First, her death at any time without children, leaving a surviving husband; and, second, her death at any time leaving children. But in the event of her dying unmarried and childless, no restriction was placed upon the language used in the second item eighth, and the fee would become absolute in her, and her heirs at law or devisees would take from her, and not by virtue of the testator's will. Wellford v. Snyder, 137 U. S., 521, [11 Sup. Ct., 183].

It is unnecessary, therefore, to discuss the cases which hold that, in the absence of controlling language indicating

a different intent, such phrases as "dying without issue," should be construed as referring to death in the lifetime of the testator; for, as we have seen, the will now under consideration contains controlling language indicating a different intent.

We think the case of Deboe v. Lowen, 8 B. Mon., 616, relied on by counsel for each side, is in point. In that case the testator directed that, after the death of his wife, his land not before disposed of should be equally divided between seven of his children, the division being made sooner if any of them wanted their part after marriage or attaining the age of twenty-one; that his son James was to have his part when he wanted it; and, "if he dies without heirs, it is my will that it goes to my children who are single now, and to Benjamin, my son; should he die with heirs, I will the land to said heir or heirs of my son James."

Said the court through Chief Justice Marshall: "And as the first devise to the seven is sufficient to give to each a fee simple, though there are no words of inheritance, and the devise over is on the contingency of any one dying without issue living at his death, we are of opinion that according to the case of Pells v. Brown, (Cro. James, 590), each one took a fee defeasible on that contingency, and not otherwise,"—referring to Hart v. Thompson's heirs, 3 B. Mon., 486. And again, after referring to the fact that in no case of a will made since the abolition of entails had the court inferred the intention to create an estate tail, or construed the devise as creating one contrary to the intention, because the words "dying without issue" were used (citing numerous cases), the court said: "But when the testator makes one disposition in case James dies without heirs, and in the same sentence makes another disposition in case he dies with heirs, we think it too evident to ad-

mit of question that the contingency upon which each disposition depends refers to the time of his death, and must be then determined. Whatever has been said of the phrase, 'if he dies without heirs or issue,' as being satisfied by a failure of his issue at any time after his death, we suppose the clause, 'if he dies with heirs I will said land to said heir or heirs,' admits of but one possible solution, and must necessarily be confined to the time of his death."

In this case the court held that James took a defeasible fee, subject to be divested upon his death without heirs of his body living at the time of his death; but as he left heirs it was held that the use of the word "heirs" instead of "children" created an estate tail, under the rule in Shelley's Case, which, under our statute, became a fee simple, and enabled him, by his conveyance, to bar his issue.

We deem it unnecessary to quote from the authorities further than to refer to the case of Crozier v. Cundall, 99 Ky., 202, [35 S. W., 546], where in one clause language was used which, unrestricted, would have given the fee simple of two of the testator's daughters, but in a subsequent clause it was provided that, if either of them "should die without bodily issue, then such portion of my estate as is devised to them shall revert back to, and be equally divided between the rest of my children and the children of those who are dead"; and it was held to pass a defeasible fee, subject to be defeated by the death of the first taker at any time without leaving bodily issue—citing Thackston v. Watson, 84 Ky., 206; Birney v. Richardson, 5 Dana, 424; Pool v. Benning, 9 B. Mon., 623, and numerous other cases. For the reasons stated, the judgment is reversed, and cause remanded, with directions to set aside the judgment sustaining the demurrer to the answer and counterclaim, and for further proceedings consistent herewith.