# IN THE MATTER OF THE TRUST ESTATE OF WALLACE R. FARRINGTON, DECEASED.

## No. 4017.

ARGUED JUNE 12, 1958.                    DECIDED JULY 18, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

This is an appeal from the order of a circuit judge of the first judicial circuit appointing Elizabeth P. Farrington, Paul L. McIlree and Riley H. Allen as trustees of the estate of Wallace R. Farrington, deceased, in place of Joseph R. Farrington, deceased.

Wallace R. Farrington executed his will on September 12, 1929, and died on October 6, 1933. Joseph R. Farrington and the Hawaiian Trust Company, Limited, were named executors in his will and the same was admitted to probate in the circuit court of the first circuit on November 6, 1933, and letters testamentary were thereupon issued to the executors.

By Article SECOND of the will the testator gave to his son, Joseph R. Farrington, and the Hawaiian Trust Company, Limited, as trustees, all shares of stock in the Honolulu Star-Bulletin, Limited, upon certain trusts set forth in the will.

By Article THIRD of this will the testator gave his residual estate to the same trustees upon the trusts therein described.

By Article FOURTH of the will the testator gave all rights with respect to the stock of the Honolulu Star-Bulletin, Limited, including the right to dispose of the same, to his son, Joseph R. Farrington, "provided, however, that so long as my son, Joseph R. Farrington, shall survive and shall devote himself to the upbuilding and continuation of The Honolulu Star-Bulletin, Limited, and its various printing and publishing enterprises, all rights with respect to the stock of said corporation, including the right to vote and to dispose of the same, shall be exercised by my Trustees in accordance with the directions of my said son."

By Article EIGHTH he provided that in the event his son-in-law, Edmond H. Leavey (written as Edmund H. Levy in testator's will), "shall establish a permanent

residence in the Territory of Hawaii and shall be able and willing to act as Trustee under the trusts set up in Article SECOND and Article THIRD" thereof, it was the testator's "desire that he be and become one of the Trustees thereunder with the same force and effect as though he were named herein as one of said Trustees."

The Hawaiian Trust Company, Limited, renounced its right to act as cotrustee and was relieved from that office by order entered August 20, 1934, appointing Joseph R. Farrington as sole trustee. Joseph R. Farrington accepted the trust and acted as sole trustee until his death on June 19, 1954.

The testator was survived by two daughters, Ruth Farrington Leavey and Frances Farrington Whittemore, and one son, Joseph R. Farrington. Joseph R. Farrington had no children of his own but was survived by two adopted children and his widow, Elizabeth P. Farrington.

In July 1954 Edmond H. Leavey filed his petition for authority to act as trustee of the trust as a matter of right under the provisions of Article EIGHTH of the will. On August 5, 1954, Elizabeth P. Farrington, individually and as guardian ad litem for John Farrington and Beverly Farrington Richardson, the adopted children of herself and Joseph R. Farrington, intervened, filing an answer and cross-complaint in which she alleged that the petitioner was not entitled to such appointment and requested that three persons from the list of names contained in the cross-complaint be named as cotrustees. On August 25, 1954, Ruth Farrington Leavey, Frances Farrington Whittemore, and their children and grandchildren, filed an answer to the cross-complaint and their cross-complaint in which they nominated their candidates for trustees.

A pre-trial order by the judge was filed September 16, 1954, requesting the parties to file memoranda on the questions:

(1) Is Edmond H. Leavey entitled to be appointed or confirmed as trustee under the trust set up in Article SECOND of the will of Wallace Rider Farrington if after June 19, 1954 he shall have established a permanent residence in the Territory of Hawaii and if he is able and willing to act as trustee?

and.

(2) Whether the children of Ruth and Frances had vested interests in the trust estate within the meaning of section 12572 of the Revised Laws of Hawaii 1945?

On the basis of the petition and the answer the circuit judge filed a ruling on October 26, 1954, holding that the petitioner's delay in qualifying as a trustee constituted as a matter of law a renunciation of the trust and on June 1, 1955, the circuit judge entered an order dismissing the petition.

On November 4, 1954, an amended answer and cross-complaint to the cross-complaint of Elizabeth P. Farrington were filed. The amended answer alleged that the adopted children of Joseph R. Farrington were not his "issue" under Article SECOND of the testator's will, and alleged further that Ruth and Frances, or they and their three children, constituted a majority in number and in interest of the beneficiaries, and nominated three candidates as cotrustees.

By answer filed on November 11, 1954, appellees denied these allegations and asserted that John and Beverly Farrington had vested interests in the trust estate as issue of Joseph R. Farrington and repeated their original prayer that three of appellees' nominees be appointed trustees.

On November 10, 1954, a motion was filed for summary judgment, which motion was accompanied by an affidavit stating that the interests of Ruth and Frances Farrington in the trust estate exceeded the value of the interests which

Elizabeth P. Farrington would receive in the estate of her husband if he died without issue.

On January 3, 1955, appellants filed a motion for leave to file a second amended answer and cross-complaint to incorporate in their answer the substance of the claim filed by Frances Whittemore against the estate of her late brother, Joseph R. Farrington, claiming various breaches of trust by Joseph R. Farrington as trustee.

A supplemental affidavit in support of their motion for summary judgment brought before the court a letter from Joseph R. Farrington relative to his conception of the status of his adopted children under his father's will.

In denying appellants' motion for summary judgment the court ruled that the adopted children of Joseph R. Farrington were "issue" under the will of Wallace R. Farrington.

Appellants late in April 1955 filed a motion for disqualification of the circuit judge, the affidavit of Frances Whittemore alleging that in her belief the judge had bias and prejudice in favor of appellee, Elizabeth P. Farrington. The presiding judge ruled the affidavit was insufficient and denied the motion.

In denying the motions for summary judgment the circuit judge ruled that neither appellants nor appellees represented a majority both in number and in interest of the beneficiaries having vested interests in the trust estate and, therefore, neither group could designate the successor trustees as a matter of right.

On June 1, 1955, an order was made appointing three nominees of appellees as successor trustees. The order also denied appellants' motion to file a second amended answer and other motions including a motion for an interlocutory appeal and motion to stay, and dismissed the petition of Edmond H. Leavey and appellants' cross-complaint. From these various rulings appeal to this court followed.

The first question presented is: Was it the intent of Wallace R. Farrington that his son-in-law, Edmond H. Leavey, act as trustee of his estate should he establish permanent residence in the Territory of Hawaii, and did the failure of Edmond H. Leavey to establish his residence in Hawaii until after the death of Joseph R. Farrington constitute a renunciation of the trust as a matter of law? In other words, was it necessary that the petitioner, Edmond H. Leavey, qualify as a trustee at the inception of the trust or within a short time thereafter?

The ruling of the circuit judge, that petitioner was required to satisfy the conditions expressed in the will on or about the time of the inception of the trust, is based on no time limitation in the will, nor do the surrounding circumstances require such a conclusion — even though the circuit judge apparently did go outside of the record in arriving at his conclusion. The language of the will itself places no time limitation upon petitioner's right to become a trustee. Article EIGHTH states "In the event that my son-in-law * * * *shall* establish a permanent residence in the Territory of Hawaii and *shall be* able and willing to act as Trustee under the trusts set up in Article SECOND and Article THIRD hereof, *then* it is my desire that he be and become one of the Trustees thereunder * * *." (Emphasis added.) This language speaks of the future and the contingencies which may or may not happen at some indeterminate date. "In the event that" clearly refers to the happening of the contingency at any future time, not merely within the testator's lifetime or at the inception of the trust, as held by the circuit judge. (*Cooksey* v. *Hill,* 106 Ky. 297 [1899], 50 S. W. 235, 236.)

There is no indication in the will of Wallace R. Farrington that the testator intended to place any limitation on the time petitioner might meet the conditions in order to qualify as a trustee. If, as all the parties assumed, both

in briefs and oral argument, Edmond H. Leavey was a career army officer at the time of the making of the will and the death of Wallace R. Farrington, this fact may well account for the omission to name General Leavey as one of the executors and failure to name him as a trustee in Article SECOND wherein the executors and other trustees were named. However, the fact that he was named in Article EIGHTH showed that the testator clearly contemplated the petitioner might qualify at some date after testator's death.

Appellees contend that petitioner's long delay acted as a disclaimer of any right to "appointment as trustee" and cite many authorities dealing with the effect of inaction by a person named as trustee. The circumstances in this case are quite dissimilar to the various cases cited by appellees. Further, the epigram that "no will has a brother," which has been quoted time and again by the courts, is applicable here. Every will is a thing of itself and must be construed as containing its own law and upon considerations pertaining to its own peculiar facts and terms. (57 Am. Jur., *Wills*, § 1223, p. 718.)

We deem it unnecessary to discuss the various decisions cited by counsel for appellees and appellants in dealing with the question of disclaimer or failure to disclaim of the right to appointment. Suffice it to say in this case the testator apparently realized that his son-in-law, being an army officer, could not be expected to establish a permanent residence in Hawaii until some indefinite time in the future and, therefore, would not be available to act at the time of the testator's death either as an executor or trustee. Further, as the testator placed the entire management of the Honolulu Star-Bulletin in his son's hands, there was no particular reason for General Leavey qualifying or taking the position of trustee so long as Joseph R. Farrington was alive and actively conducting the affairs of the

Honolulu Star-Bulletin. It will be noted that the main
duty of the trustees was the management of the Honolulu
Star-Bulletin, Limited, and as this had been placed in
complete control of Joseph R. Farrington, the Hawaiian
Trust Company, Limited, renounced its trusteeship, ap-
parently because it would have no important duty to
perform in connection with the main trust of the will.
However, after Joseph R. Farrington's death it might well
be that General Leavey felt that the two surviving daugh-
ters of the testator should have representation among the
trustees of the estate and in the selection of the manage-
ment of the Honolulu Star-Bulletin.

The case before us involving the right of a person to
become an additional trustee upon the happening of cer-
tain contingencies set forth in the testator's will is similar
to the designation by the testator of a successor trustee
and the same obligation of the court to carry out the will
of the testator is applicable in both cases. Restatement of
the Law of Trusts makes no distinction between the two.
It states:

"*g. Designation by settlor.* In the instrument cre-
ating the trust the settlor may designate who shall
become trustee if the original trustee designated by
him should cease to be trustee; or *may provide for an
additional trustee.*" (*Trustee,* c. 4, § 108, comment *g*
on clause (b).) (Emphasis added.)

*Boston Safe Deposit & Trust Co.* v. *Taylor,* 262 Mass.
287, 159 N. E. 618 (1928), a case involving the appoint-
ment of a successor trustee, provided "In case of the death,
resignation or failure to act of any trustee hereunder, *it
is my wish* that the Boston Safe Deposit & Trust Com-
pany * * * be appointed his successor to the end that upon
the death, resignation or failure to act of all my original
trustees, the said Boston Safe Deposit & Trust Company
will ultimately become the sole trustee hereunder."

(Emphasis added.) After the death of the named trustees, the trust company petitioned for appointment as trustee. This was opposed by the beneficiaries under the trust but the court found as a fact that the Boston Trust Company was suitable to be appointed a trustee and ruled as a matter of law that in accordance with the intention of the testator under the terms of the will the court was required to appoint it. This ruling was sustained, the upper court stating:

> "The language of the will is free of ambiguity. The testator clearly manifested his wish to have the Trust Company appointed. He desired that on the death, resignation or failure to act of the individual trustee the Boston Safe Deposit & Trust Company was to be the sole trustee. The words of the will expressing the testator's wish were a direction to the court to appoint the company named; and the desire of the testator as shown by his will is to be carried out."

It is elementary that such words as "request," "desire," or "wish," etc., and others of kindred significance, are mandatory where it is evident from the language of the will and the circumstances under which it was written that they are to be so construed with a view to carrying out the testator's evident intent. See *Boston Safe Deposit & Trust Co.* v. *Taylor, supra; In re Estate of Crosby,* 218 Minn. 149, 15 N. W. (2d) 501 (1944).

As the purpose of the trust was being carried out by Joseph R. Farrington under the express directions of the will, there was no renunciation of General Leavey by his failure to qualify until the death of Joseph R. Farrington. Under the authorities cited holding that long delay may act as a renunciation of the trust and equity may appoint a new trustee, such cases are to prevent the failure of the trust. Such is not the situation in the instant case. The so-called rule that there must be acceptance within a

reasonable time is based on the necessity that the duties of the terms of the trust be carried out. The oft-quoted legal maxim of the common law, *"cessante ratione legis, cessat ipsa lex"* (where the reason for the rule ceases, the rule also ceases) is applicable here. (*Funk* v. *United States,* 290 U. S. 371, 385.) As the reason for the rule does not exist in this case, the rule ceases, so there was no necessity for any affirmative action by General Leavey until after the death of Joseph R. Farrington, the sole surviving trustee, and General Leavey expressed his desire to assume the duties as trustee.

Therefore, we find that if after a hearing in the court below Edmond H. Leavey is found to have complied with the conditions set forth in the testator's will and to be a suitable person to be appointed trustee, as a matter of law Edmond H. Leavey is entitled to be appointed thereto in accordance with the intention of the testator as expressed in his will. However, we do not feel that Edmond H. Leavey should be appointed the sole trustee of this estate. Paragraph EIGHTH of the testator's will provided that the testator's son-in-law become "one of the Trustees," that is, with Joseph R. Farrington and the Hawaiian Trust Company, Limited, or with the Hawaiian Trust Company, Limited, if Joseph R. Farrington had died. Inasmuch as the Hawaiian Trust Company, Limited, rejected appointment, some other trustee or trustees should be appointed to act with Edmond H. Leavey. Whether a corporation or one or more individuals should be appointed to act with Edmond H. Leavey as trustees is a matter for the sound discretion of the court making the appointment, taking into consideration all pertinent matters.

The next question is whether adopted children are "issue" under the terms of the testator's will. In passing upon this question we must consider the Hawaiian law of adoption as contrasted with adoption under the common

law or, rather, in the common-law States.

As stated *In re Estate of Nakuapa, deceased,* 3 Haw. 342, cited hereinafter, the statement is made on page 342:

"Before written laws are passed by the legitimate authorities of a nation, the customs and usages which have long prevailed, and have been universally recognized, have the same force of law as those subsequently passed and incorporated in a Code. * * *

"It is unnecessary to give a detail of evidence in relation to the custom and usage which prevailed in relation to adoption, prior to the written law, for it is admitted that it was a very general custom among the people. Under the general term of adopted children, there were various relations to the adopted. Some were mere foster children, taken to nurse and to exercise a parental care over, and for a temporary purpose; others were adopted as one's own children to be cared for, to live with the adopter as such * * *."

On page 347 it continues:

"The Court is of opinion that there were children by adoption who were regarded in all respects as one's own children, and that in the enactment of laws, the same terms were applied *to them* as to the children of the blood, that is, they were regarded as the intestate's children."

The two types of children taken by foster parents were the *keiki hanai,* who were not truly adopted but merely reared in the home, and the *keiki hookama,* the latter being regarded the same as actual children of the blood.

In contrast to the civil law, adoption was unknown to the common law and in common-law States is purely a matter of statute which, being in derogation of the common law, is ordinarily strictly construed. However, in Hawaii, as pointed out, long before the advent of the white man and his civilization, the Hawaiians had by ancient

custom regarded adopted children the same as children of the blood and consequently adopted children were regarded as "children" or "issue" under the early Hawaiian decisions construing the statutes regarding the descent of property.

Prior to 1892 Hawaiian courts were authorized to decide according to reason and equity and to adopt the principles of the common law or the civil law when founded in justice and not contrary to Hawaiian law or usage. (L. 1847, p. 5, C. C. 1859, ss. 14, 823.)

For example, in the case of *Kake* v. *Horton*, 2 Haw. 209, the court in holding that the wife had an action for the wrongful death of her husband, refused to follow the common law, the court stating at page 212:

"* * * The several Courts of Record having the power, under the 823d Section of the Civil Code, which is not a new provision in our Statutes, but one which has been repeatedly acted upon by this Court, to cite and adopt, at their discretion, the reasonings and principles of the Common Law, or of the Civil Law, so far as the same may appear to the Court to be founded in justice, and not in conflict with the laws and customs of this Kingdom. If, as is intimated in the case just referred to, the principles of the Civil Law would permit the institution of such an action as the present, we have no hesitation in preferring the doctrine of the Civil Law to that of the English Common Law upon this point, for we conceive the former to be pre-eminently 'founded in justice.'

"The principle which we now recognize will become, by judicial adoption, a valuable part of the Common Law of this Kingdom."

There are numerous early Hawaiian decisions where the court refused to follow the common-law rules. See citations under Title 1, paragraph 1, Revised Laws of Hawaii 1955.

In the chapter on *Descent of Property,* Laws of 1850, section 1 thereof provided "That whenever any person shall die intestate, within this kingdom, his property both real and personal, of every kind and description, shall descend to and be divided among his heirs as hereinafter prescribed." Section 2 thereof provided "The property shall be divided equally among the intestate's children, and the issue of any deceased child by right of representation * * *." Section 16 provided "The word 'issue,' as used in this act, includes all the lawful lineal descendants of the ancestor."

Among the early Hawaiian decisions it was held in numerous decisions that an adopted child inherited from the adopting parent as if he were a child of the blood.

For example, in the 1856 decision *In the Matter of the Estate of Hakau,* 1 Haw. 471, 473, the statement is made that where there is no satisfactory evidence to show that a certain person had been adopted by the testator but was merely a *keiki hanai,* he would not inherit. "Had Manoa been adopted by Hakau as her son, in due form of law, he would have been sole heir to her estate, upon her dying intestate."

In *Abenela* v. *Kailikole,* 2 Haw. 660, 661, in an action in ejectment where land was claimed by plaintiff as an alleged adopted son of the former owners of the land, the court said: "Upon examination of the case, we deem it unnecessary to advert to any other question than that of the plaintiff's alleged adoption, as that seems under the circumstances to be decisive of the whole case." The adoption not having been made in writing, as required by the statute, the court held on page 662:

"The Legislature having made it necessary, and we think wisely so, that all agreements of adoption which are of great importance, as affecting rights in property, should be made in writing, and duly recorded;

and as no compliance with this requirement has been shown in the present case, the plaintiff cannot prevail in this action, in the absence of the necessary legal evidence of his having been adopted, as alleged, by Kaailauhala and Laumaka."

Again, the *Estate of His Majesty Kamehameha IV*, 2 Haw. 715, relative to inheritance of Kamehameha's private lands by the adopted child of Kamehameha III, the statement is made on page 726 "* * * *he was entitled as the adopted son* of Kamehameha III., *to inherit* the remainder of *his estate not devised* to any one else, subject to dower." (Emphasis added.)

*In re Estate of Nakuapa, deceased*, 3 Haw. 342, the court said:

"It is unnecessary to give a detail of evidence in relation to the custom and usage which prevailed in relation to adoption, prior to the written law, for it is admitted that it was a very general custom among the people. * * * Our statute of inheritance declares that property shall be divided equally between the intestate's *children*. We regard an *adopted child* as included in this general term." (Emphasis added.)

A number of cases are discussed in this opinion and on page 344 the statement is made:

"In the case of Abenela *vs.* Kailikole, 2 Haw. Rep., 660, Mr. Justice Robertson says that 'all agreements of adoption are of great importance, as affecting the rights of property,' and in the case of the estate of Kamehameha IV., the same Justice says that 'He was entitled, as the adopted son of Kamehameha III., to inherit the remainder of his estate, not demised to any one else, subject to dower.'

"The opinions of Chief Justice Lee and Mr. Justice Robertson are worthy of very great consideration on all questions where the customs and usages of the Ha-

waiian people are concerned. They were familiar with the people, and their experience on the Land Commission, and their examinations of cases touching native rights, enabled them to form very correct opinions on all questions involving Hawaiian usages and customs.

*"The question must be decided upon our own usages and customs, and written laws, and none other."* (Emphasis added.)

It also refers to the Roman law as follows:

" 'By the ancient civil law, adoption created the relation of father and son, for all practical purposes, just as if the adopted son were born of the blood of the adopted father in lawful marriage. The adopted child quitted entirely his own family, and entered the family of his adopter, passing under the paternal power of his new family, and acquiring the capacity to inherit through him.' Roman Law, by Lord Mackenzie, 122."

On page 347 it is stated:

"The Court is of opinion that there were children **by adoption** who were regarded in all respects as one's own children, and that in the enactment of laws, the same terms were applied *to them* as to the children of the blood, that is, they were regarded as the intestate's children.

"* * *

"As adoption was recognized by the ancient customs and has continued to be by the laws of the Kingdom, it is evident that it was a relationship endeared to the people, and regarded by them of the highest importance. Is it reasonable to suppose then, that it imparted no rights—that it was the relationship of a day, and for a comparatively unimportant purpose? To the Hawaiian, it was a sacred relation, and having all the rights, duties and obligations of a child of the blood * * *."

Without discussing all the intervening cases relative to the status of an adopted child, we come to the *Estate of Kamauoha,* 26 Haw. 439, decided in 1922, after the legislature had passed several statutes relative to adoption, particularly Act 3 of the Session Laws of Hawaii 1919, which provided that the judge granting the adoption of a child shall make an order declaring that from that date "to all legal intents and purposes" such child is the child of the adopting parents. In the *Kamauoha* case it was held that "A person adopted under and in conformity with the statutes of Hawaii inherits *through* his adoptive mother from her father, as fully as though he had been her natural child." (Emphasis added.)

As stated before, the statute involved was whether the word "issue" included an adopted child of the daughter of the deceased as used in the rules of descent. The court in so deciding quoted the statute that the judge should make an order declaring from that date that to all legal intents and purposes such child is the child of the adopting parents. The court finds no difficulty in deciding that the child is "issue" of the adopting parent. It further stated:

> "What we are here concerned with, therefore, is not who are the 'issue' or 'descendants' of Kamauoha [the deceased], but who are the 'issue' or 'descendants' of Sarah Kamakau [daughter of Kamauoha] * * *."

The court answers:

> "The 'children' of Sarah Kamakau would therefore take, under the circumstances of this case, by right of representation, the share which Sarah would have taken. The question naturally arises, who are her children? The answer must be, all those persons who lawfully are such, whether made so by nature or by statute."

Many cases from other jurisdictions are discussed in the *Estate of Kamauoha.*

The next Hawaiian decision dealing with the word "issue" as including adopted children is the case of *O'Brien* v. *Walker,* 35 Haw. 104, *affirmed* 115 F. (2d) 956, *certiorari denied* 312 U. S. 707. This case is known as the Mamo Clark case because Mamo Clark was the adopted daughter seeking recognition as "issue" of her adopting parent. In that case John A. Cummins executed a deed of trust in 1895 providing income to his wife and their four children for life, and upon the death of the wife and four children the trust estate should be conveyed "to the lawful issue of the children aforesaid then surviving, such issue to take by right of representation." The last of the four children died in 1937. One of his daughters had no children by natural procreation but had adopted some two years *after* the settlor's death Margaret Mamo Clark, an infant of two years. Mamo Clark survived both her adopted mother and the trust termination. The trustee sought instructions on whether Mamo Clark was entitled to take under the provision for vesting and conveying "to the lawful issue of the children aforesaid then surviving." The circuit judge held that an adopted child was lawful issue of the settlor's daughter and entitled to a one-fourth share of the trust estate. The decision was affirmed by our supreme court and the Circuit Court of Appeals for the Ninth Circuit, *supra.* The opinion of the court reviewed the judicial history of adoption in Hawaii and found that ancient Hawaiian customs and usages existing prior to any written law in Hawaii in respect to adoption regarded adopted children as blood children with the right of inheritance; that the customs and usages existing in ancient times may be drawn upon by the courts in construing the intention of the trustor in the use of the word "issue" where the intention is not clearly indicated in the context of the instrument itself or from the surrounding circumstances; that "an adopted child shall be deemed to be in

all respects a child of the adopter, as much so as is a natural child" (*Estate of Kamauoha,* 26 Haw. 439, 447), and therefore takes under the trust deed.

The unbroken rule of construction of our statute of descent for more than one hundred years in Hawaii has been that in the early days children adopted under the Hawaiian customs, and in later days under the Hawaiian statute of adoption, are "children" and "issue" of the adopting parent.

Finally, in construing the will in *Trust Estate of George H. Holt, Deceased,* 42 Haw. 129, 137, decided October 4, 1957, this court held that an adopted child of the testator's son was testator's heir and took a share of the trust income limited by testator's will to "my heirs in equal shares per stirpes." In commenting upon the statute that an adopted person is for all purposes the child of the adopting parents, the statement was made:

"This provision was in effect when Alberta was adopted and when the testator died. As a matter of fact it was in effect until 1953 when the legislature resolved all doubts concerning the legal effect of adoption by providing that a legally adopted child shall be considered to be a natural child of the whole blood of the adopting parent or parents under the provisions relating to the descent of property. (S. L. H. 1953, Act 115)"

This will was made in 1929, the same year in which the will of Wallace R. Farrington was executed.

The brief for defendants-cross appellants, being all the descendants by blood of the testator, in commenting upon the Mamo Clark case and the departure therein of this court from common-law precedents, spoke of "an illusory concept of 'unwritten law wherein adoptions were recognized as part of the life of the people and as a general custom and usage, endeared and revered by the people,' as

'surrounding circumstances' sufficient to outweigh the very strong presumption, well-established in Anglo-American jurisprudence, that a testator, in using in his will the expression 'issue' of another, does not intend to include children adopted by that other person after the testator's death, in the absence of clear evidence to the contrary."

The statement is further made that if this court had intended to establish in this jurisdiction a new canon on construction applicable in general to decedents in Hawaii, irrespective of their family and other background and directly contrary to that long-established in other common-law jurisdictions, it would have announced the canon in unmistakable terms. It then discusses the New England background of Wallace R. Farrington and his Anglo-Saxon ancestry as showing a contrary intent.

Wallace R. Farrington, who prior to his death had been for many years a resident of the Territory of Hawaii and entered fully into its life, having occupied the position of governor for eight years, presumably would be familiar with the Hawaiian customs of adoption and the interpretation given to the words "issue" and "children" in Hawaii for more than seventy-five years prior to the date of his will.

Although we do not deem it necessary to go outside our own decisions of more than one hundred years "The question must be decided upon our own usages and customs, and written laws, and none other" (*In re Estate of Nakuapa, deceased, supra*), we call attention to *In Re Holden's Trust*, 207 Minn. 211, 291 N. W. 104. That was a case where the testatrix in her will gave income in three equal shares to a niece, a nephew's wife, and an adopted son Paul. Upon Paul's death one-third of the trust estate was to be distributed to his "lawful issue" and one-third each to the other two life tenants or their lawful issue. Eleven years after the death of the testatrix Paul adopted

a son who survived Paul's death and claimed one-third of the trust estate. The Supreme Court of Minnesota held that the adopted child of Paul was his "lawful issue." Portions of the syllabus state:

"Apart from statute, the word 'issue,' as used in a will means lineal descendants including those of every degree. * * *"

"Adoption gives to an adopted child the status of issue by virtue of statute. Mason's Minn. St. 1927, § 8630."

In this opinion the statement is made that:

"Technical words which have a definite and well-understood meaning will be presumed to have been used in that sense in the absence of surrounding circumstances or context which show that a different meaning was intended. In In re Estate of Fretheim, 156 Minn. 366, 194 N. W. 766, we held that the words 'my legal heirs according as the law provides' in a testamentary disposition of property should be taken in their statutory meaning, absent context and surrounding circumstances controlling meaning, with the observation, 'If testators will persist in using words of technical import, without explanatory context, their beneficiaries cannot complain if courts continue to give such words effect according to their long-accepted legal definition.' The question in that situation is not so much one of true intention as legal implications from the language. In New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431, 434, 31 A. L. R. 791, there was a gift over to 'next of kin' in default of 'issue'. The question was whether the next of kin took per stirpes or per capita in the absence of any expression in the will or surrounding circumstance controlling the meaning. Mr. Justice Cardozo said: 'In all likelihood he [the testator] simply failed to think the subject

through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law. The question in such circumstances is one not of intention in the proper sense, but of the legal implications of one formula or another."

In the instant case had the testator not desired our courts to follow the unbroken decisions of many years holding adopted children as "children" or "issue" of the adopting parents, he could have avoided this by specifically limiting the income or remainder to issue of the blood.

We therefore hold that the adopted children of Joseph R. Farrington and Elizabeth P. Farrington are "issue" of Joseph R. Farrington and Elizabeth P. Farrington and come within the word "issue" as used in the will of Wallace R. Farrington.

Although there are other questions raised in this appeal —such as that the lower court was biased and prejudiced and the Farrington sisters and Mr. Leavey were denied a hearing—we do not deem it necessary to pass upon them inasmuch as the case must be reversed and will not come before the same judge, who is no longer in office.

Reversed and remanded for further proceedings in accordance with this opinion.

*Raymond M. Torkildson* (*Moore, Torkildson & Rice* on the briefs) and

*J. Russell Cades* (*Smith, Wild, Beebe & Cades* on the briefs) for appellants.

*J. Garner Anthony* (*Robertson, Castle & Anthony* and *Robert E. Brown* on the briefs) for appellees.